126 P.3d 87 (2006)
131 Wash.App. 227
STATE of Washington, Respondent,
v.
Darrell EVERYBODYTALKSABOUT, Appellant.
No. 53570-6-I.
Court of Appeals of Washington, Division 1.
January 17, 2006.
*88 Susan Wilk (WAP), Seattle, WA, for Appellant.
Deborah Dwyer (KCPA), Seattle, WA, for Respondent.

OPINION PUBLISHED IN PART
BAKER, J.
¶ 1 Darrell Everybodytalksabout appeals his conviction for first degree murder. He argues, among other things, that his Fifth Amendment protection against self-incrimination and Sixth Amendment right to counsel were contravened when, without providing *89 Miranda[1] warnings, a Department of Corrections (DOC) employee interviewed him after his first conviction for purposes of preparing a presentence report, and his statements were used against him in a subsequent trial following a successful appeal. We hold that the DOC official did not interrogate Everybodytalksabout within the meaning of Miranda or deliberately elicit incriminating statements from him in violation of his right to counsel. We affirm.

I.
¶ 2 In February 1996, Rigel Jones was stabbed to death in the Pioneer Square area of Seattle. Darrell Everybodytalksabout and Phillip Lopez were charged jointly with first degree murder for Jones' death. The State argued that Everybodytalksabout and Lopez killed Jones while in the course of robbing him.
¶ 3 Everybodytalksabout's first trial ended in a mistrial because, after the State rested its case, the court discovered that the State's principal witness had committed perjury.[2] Everybodytalksabout's second trial ended in a conviction. But our Supreme Court reversed his conviction after concluding that the superior court committed reversible error by admitting evidence that was inadmissible under ER 404(b).[3]
¶ 4 This appeal stems from Everybodytalksabout's third trial. Early in the proceedings, Everybodytalksabout moved to dismiss based on an alleged discovery violation and destruction of evidence. The court denied his motion.
¶ 5 Everybodytalksabout did not testify at trial, but several witnesses related statements allegedly made by him. Diane Navicky, a DOC employee, testified to statements Everybodytalksabout made during a presentence interview after his second trial, but before his conviction was reversed on appeal. The purpose of the interview was to gather unbiased information to present to the sentencing judge. At the end of the interview, Navicky asked Everybodytalksabout to tell her his version of events. Everybodytalksabout said that he participated in the robbery, but did not kill Jones.
¶ 6 Vincent Rain, Everybodytalksabout's former cellmate, testified that Everybodytalksabout told him that he and Lopez pretended to be selling drugs in order to rob a guy. He said that Everybodytalksabout got into an argument with the man and, when they began wrestling, Lopez stabbed the victim. In exchange for his testimony, the State assisted Rain by transferring him to a Colorado prison.
¶ 7 Everybodytalksabout moved for a mistrial, arguing that he was denied a fair trial because Detective Eugene Ramirez, a witness for the State, violated an in limine ruling. Yolonda Lopez, Phillip Lopez's former girlfriend, was called to testify about the crime. After the first day of her testimony, Ramirez drove Yolonda home. During the drive, Ramirez told Yolonda that he was displeased with her testimony. This conversation occurred in violation of an in limine ruling precluding witnesses from discussing their testimony. The court allowed the parties to question Yolanda and Ramirez about the incident, but ultimately denied Everybodytalksabout's motion for a mistrial.
¶ 8 A jury found Everybodytalksabout guilty of first degree murder while armed with a deadly weapon.

II.
¶ 9 Everybodytalksabout argues that his Fifth Amendment right against self-incrimination was contravened when Navicky interviewed him without providing Miranda warnings and his statements were later used against him at trial.[4]
*90 ¶ 10 The Fifth Amendment protects a defendant against self-incrimination. Generally, a defendant must invoke his Fifth Amendment protections in order for them to apply.[5] But there is an exception to this rule when a state agent conducts a custodial interrogation without providing Miranda warnings.[6]
¶ 11 "Miranda warnings were developed to protect a defendant's constitutional right not to make incriminating confessions or admissions to police while in the coercive environment of police custody."[7] A suspect must receive a Miranda warning when he endures a custodial interrogation by a state agent.[8] A custodial interrogation involves express questioning or its functional equivalent, initiated after a person is in custody or otherwise significantly deprived of his freedom.[9] The functional equivalent of express police questioning includes any words or actions that are reasonably likely to elicit an incriminating response from the suspect.[10] Without Miranda warnings, a suspect's statements during a custodial interrogation are presumed involuntary.[11]
¶ 12 We review a trial court's custodial status determination de novo.[12] Whether a person was in custody for purposes of Miranda is measured by an objective test.[13] We look at the circumstances surrounding the interrogation and decide whether a reasonable person would have felt that she was not free to terminate the interrogation and leave.[14]
¶ 13 In State v. Sargent,[15] our Supreme Court concluded that the defendant was in a custodial setting when he was locked in one side of a booth in the King County jail's visiting area during a presentence interview conducted by a probation officer.[16] Everybodytalksabout was interviewed by Navicky in the same setting; therefore he argues that, under Sargent, he was in custody for Miranda purposes.
¶ 14 However, our Supreme Court has more recently explained: "When dealing with a person already incarcerated, `custodial' means more than just the normal restrictions on freedom incident to incarceration. There must be more than the usual restraint to depart."[17] This holding calls Sargent into question.[18]
¶ 15 Everybodytalksabout was free to leave the room at any time.[19] The presentence interview was voluntary. Although Everybodytalksabout had to push a button to summon the jail officer when he was ready to leave, he readily did so when he decided to end the interview. There was no more restraint *91 on him than usual in a jail setting. Thus, Everybodytalksabout was not in custody for purposes of Miranda protections.
¶ 16 Neither was Everybodytalksabout interrogated. "Interrogation" under Miranda refers to any words or actions that the state agent should know are reasonably likely to elicit an incriminating response.[20] For purposes of Miranda warnings, interrogation involves some degree of compulsion.[21]
¶ 17 In Sargent, the court ordered a probation officer to prepare a presentence report after the defendant was convicted of murder and arson. In the course of the interview, the probation officer asked Sargent if he was guilty. Sargent responded that he was innocent.[22] The officer then told Sargent that he would have to come to the truth with himself if he was to benefit from mental health counseling, meaning that he would have to admit that he committed the crime.[23] Sargent left the interview without confessing, but called the probation officer several days later and indicated that he wanted to make a written statement. At the second meeting, the officer gave Sargent a pad of paper and pencil and Sargent made a written confession.[24] Sargent was never provided Miranda warnings and his attorney was contacted only after he confessed.[25]
¶ 18 The court concluded that Sargent was interrogated in violation of the Fifth Amendment. It explained that the proper inquiry is an objective one, focusing on what the state agent knows or ought to know will be the result of his words or acts.[26] It held that the officer should have known that his question, "[d]id you do it," followed by his statements to Sargent that he must come to the truth with himself to benefit from mental health counseling, would compel Sargent to confess.[27]
¶ 19 The situation we are presented with is distinguishable. Navicky did not ask Everybodytalksabout if he committed the crime or suggest that he must confess in order to benefit during sentencing. Rather, she simply asked for his version of the events, knowing that he had previously denied any involvement in the crime. She did so in order to allow Everybodytalksabout the opportunity to tell the court his story and to prepare a nonbiased presentence report for the court. She did not attempt to coerce Everybodytalksabout.
¶ 20 Additionally, our Supreme Court explained in State v. Warner[28] that, while there is some compulsion in a situation where a defendant may believe cooperation in the form of a confession will lead to more lenient treatment, it is not the type of compulsion contemplated in Miranda.[29] Similarly, while there may have been some compulsion if Everybodytalksabout believed cooperation with Navicky would lead to a more lenient sentence, it is not the type of compulsion contemplated in Miranda.[30]
¶ 21 Navicky did not interrogate Everybodytalksabout in a manner requiring Miranda warnings. Everybodytalksabout's Fifth Amendment protection against self-incrimination was not contravened.
¶ 22 Everybodytalksabout next argues that his right to counsel was violated when he was interviewed by Navicky without his attorney present. The right to counsel is constitutionally guaranteed at all critical stages of a criminal proceeding, including *92 sentencing.[31] In Sargent, three justices of our Supreme Court concluded that the right to counsel extended to the defendant during a presentence interview with a probation officer. Justice Fred H. Dore explained that the assistance of counsel was critical because Sargent's appeal was pending and Sargent "was ignorant of the fact that, if his conviction was overturned on appeal, the confession would render his new trial a formality."[32]
¶ 23 Some federal courts have held that presentence interviews with probation officers are not critical stages requiring counsel.[33] These courts have distinguished the purposes for which the defendant's statements are gathered and the role of a probation officer. For example, in United States v. Jackson,[34] the Seventh Circuit noted:
A federal probation officer is an extension of the court and not an agent of the government. The probation officer does not have an adversarial role in the sentencing proceedings. In interviewing a defendant as part of the presentence investigation, the probation officer serves as a neutral information gatherer for the sentencing judge.[[35]]
Similarly, Navicky did not have an adversarial role in these proceedings.
¶ 24 However, a key distinction is that Everybodytalksabout's appeal was pending when he was interviewed by Navicky. His statements were used to convict him in a later trial, not merely for sentencing purposes. Like the defendant in Sargent, he may have been ignorant of the fact that, if his conviction was overturned on appeal, his incriminating statements could be used against him in a subsequent trial. Considering the gravity of what was at stake, we conclude that the presentence interview constituted a critical stage of the proceeding.
¶ 25 But a defendant's right to counsel is not necessarily contravened whenever the State obtains incriminating statements from the accused after the right to counsel has attached.[36] We must ask whether the State deliberately elicited incriminating statements from Everybodytalksabout.[37] This is a legal question, which we review de novo.[38]
¶ 26 The Supreme Court has distinguished the "deliberately elicited" standard from custodial interrogation under the Fifth Amendment.[39] Interrogation is not necessary *93 to find deliberate elicitation. The State deliberately elicits statements from a defendant when it intentionally creates a situation likely to induce the defendant to make incriminating statements without the assistance of counsel.[40]
¶ 27 The State did not deliberately elicit incriminating statements from Everybodytalksabout. The system by which a DOC official interviews a defendant for purposes of preparing a presentence report for the court is not, by design, likely to elicit incriminating statements. Participation is voluntary and the objective is to gather unbiased sentencing information. Additionally, Everybodytalksabout has not shown that Navicky's specific conduct or questions were likely to elicit incriminating statements. Included within a series of impartial questions, Navicky asked Everybodytalksabout for his version of the events. Everybodytalksabout maintained his innocence throughout trial and Navicky's question created a situation where Everybodytalksabout could proclaim his innocence once more. Unlike the officer in Sargent, Navicky did not follow up the question with coercive statements that suggested it would be in his best interests to confess to the crime. Everybodytalksabout's right to counsel was not contravened.
¶ 28 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.
WE CONCUR: AGID and GROSSE, JJ.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct., 1602, 16 L.Ed.2d 694 (1966).
[2] State v. Everybodytalksabout, 145 Wash.2d 456, 460, 39 P.3d 294 (2002).
[3] Everybodytalksabout, 145 Wash.2d at 480, 39 P.3d 294.
[4] Although Navicky testified that she generally provided Miranda warnings before conducting a presentence interview, she could not remember specifically whether she provided Everybodytalksabout warnings. The trial court refused to infer that he was given Miranda warnings.
[5] State v. Warner, 125 Wash.2d 876, 884, 889 P.2d 479 (1995).
[6] Warner, 125 Wash.2d at 884, 889 P.2d 479.
[7] State v. Heritage, 152 Wash.2d 210, 214, 95 P.3d 345 (2004) (citing State v. Harris, 106 Wash.2d 784, 789, 725 P.2d 975 (1986), cert. denied, 480 U.S. 940, 107 S.Ct. 1592, 94 L.Ed.2d 781 (1987)).
[8] Heritage, 152 Wash.2d at 214, 95 P.3d 345; State v. Sargent, 111 Wash.2d 641, 647, 762 P.2d 1127 (1988).
[9] State v. Hawkins, 27 Wash.App. 78, 81-82, 615 P.2d 1327 (1980).
[10] State v. Walton, 64 Wash.App. 410, 414, 824 P.2d 533 (1992).
[11] Heritage, 152 Wash.2d at 214, 95 P.3d 345.
[12] State v. Lorenz, 152 Wash.2d 22, 36-37, 93 P.3d 133 (2004).
[13] Lorenz, 152 Wash.2d at 36-37, 93 P.3d 133.
[14] State v. Templeton, 148 Wash.2d 193, 208, 59 P.3d 632 (2002).
[15] 111 Wash.2d 641, 647, 762 P.2d 1127 (1988).
[16] Sargent, 111 Wash.2d at 649, 762 P.2d 1127.
[17] Warner, 125 Wash.2d at 885, 889 P.2d 479. See also State v. Post, 118 Wash.2d 596, 607, 826 P.2d 172, 837 P.2d 599 (1992).
[18] In Warner, the court noted the Sargent opinion and did not overrule it. Warner, 125 Wash.2d at 885, 889 P.2d 479. However, the court was not directly presented with the circumstances present in Sargent.
[19] See State v. Jacobsen, 95 Wash.App. 967, 975, 977 P.2d 1250 (1999) (explaining that a defendant who was ordered to attend the psychological evaluation was not in custody for purposes of Miranda because he "was free to leave and in fact returned home with his mother after the conclusion of the interview").
[20] Rhode Island v. Innis, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980).
[21] Warner, 125 Wash.2d at 884, 889 P.2d 479.
[22] Sargent, 111 Wash.2d at 642, 762 P.2d 1127.
[23] Sargent, 111 Wash.2d at 643, 762 P.2d 1127.
[24] Sargent, 111 Wash.2d at 643, 762 P.2d 1127.
[25] Sargent, 111 Wash.2d at 642, 643-44, 762 P.2d 1127.
[26] Sargent, 111 Wash.2d at 651, 762 P.2d 1127.
[27] Sargent, 111 Wash.2d at 650, 762 P.2d 1127.
[28] 125 Wash.2d 876, 884, 889 P.2d 479 (1995).
[29] Warner, 125 Wash.2d at 884, 889 P.2d 479. Warner involved a defendant who made admissions during group therapy sessions conducted by counselors at the Department of Juvenile Rehabilitation. Warner, 125 Wash.2d at 884, 889 P.2d 479.
[30] Warner, 125 Wash.2d at 884, 889 P.2d 479.
[31] State v. Robinson, 153 Wash.2d 689, 694, 107 P.3d 90 (2005).
[32] Sargent, 111 Wash.2d at 647, 762 P.2d 1127.
[33] U.S. v. Jackson, 886 F.2d 838, 844 (7th Cir. 1989); Brown v. Butler, 811 F.2d 938, 940-41 (5th Cir.1987); Baumann v. U.S., 692 F.2d 565, 575-76 (9th Cir.1982).
[34] 886 F.2d 838, 844 (7th Cir.1989).
[35] Jackson, 886 F.2d at 844.
[36] Kuhlmann v. Wilson, 477 U.S. 436, 459, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986).
[37] Courts have applied two different standards in assessing whether a defendant's right to counsel was violated: the "knowingly circumvented" standard and the "deliberately elicited" standard. Compare Maine v. Moulton, 474 U.S. 159, 176, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985) (knowingly circumvented), and Sargent, 111 Wash.2d at 645, 762 P.2d 1127 (three justices applying the knowingly circumvented standard in a concurring opinion), with Fellers v. U.S., 540 U.S. 519, 524, 124 S.Ct. 1019, 157 L.Ed.2d 1016 (2004) (deliberately elicited), and Kuhlmann v. Wilson, 477 U.S. 436, 459, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (deliberately elicited), and In re Personal Restraint of Benn, 134 Wash.2d 868, 911, 952 P.2d 116 (1998) (deliberately elicited), and Sargent, 111 Wash.2d at 665, 762 P.2d 1127 (Durham, J. dissenting) (explaining that the rejection of the deliberately elicited test in favor of knowing circumvention is "plain-faced wrong"). In Sargent, three justices applied the knowingly circumvent standard and concluded that Sargent's right to counsel was violated. Sargent, 111 Wash.2d at 645, 762 P.2d 1127. But knowing circumvention is not the standard for determining whether the Sixth Amendment right to counsel has been violated. In Fellers v. U.S., the United States Supreme Court made clear that the deliberate elicitation test is the appropriate standard. Fellers, 540 U.S. at 524, 124 S.Ct. 1019 (explaining that the court has consistently applied the deliberately elicited standard).
[38] See U.S. v. Henry, 447 U.S. 264, 269, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980) ("The question here is whether under the facts of this case a Government agent `deliberately elicited' incriminating statements from Henry within the meaning of Massiah.").
[39] Fellers, 540 U.S. at 524, 124 S.Ct. 1019 (citing Michigan v. Jackson, 475 U.S. 625, 632, n. 5, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986) and Rhode Island v. Innis, 446 U.S. 291, 300, n. 4, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980)).
[40] Henry, 447 U.S. at 274, 100 S.Ct. 2183; Massiah v. U.S., 377 U.S. 201, 206, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964); Randolph v. California, 380 F.3d 1133, 1146 (9th Cir.2004); U.S. v. Kimball, 884 F.2d 1274, 1278 (9th Cir.1989).