166 P.3d 693 (2007)
STATE of Washington, Respondent,
v.
Darrell EVERYBODYTALKSABOUT, Petitioner.
Phillip Lara Lopez, Defendant.
No. 78514-7.
Supreme Court of Washington, En Banc.
Argued March 20, 2007.
Decided September 6, 2007.
As Amended September 13, 2007.
Susan F. Wilk, Washington Appellate Project, Seattle, WA, for Petitioner.
Deborah A. Dwyer, Prosecuting Atty King County, King County Pros Office/Appellate Unit, Seattle, WA, for Respondent.
FAIRHURST, J.
¶ 1 Darrell Everybodytalksabout seeks review of a published decision by Division One of the Court of Appeals affirming his conviction for first degree and second degree felony murder. He claims his rights under the *694 Fifth[1] and Sixth[2] Amendments to the United States Constitution were violated when incriminating statements he made to a Department of Corrections (DOC) community corrections officer (CCO) during a presentence interview were used in a subsequent proceeding.
¶ 2 We reverse the Court of Appeals and remand for retrial without Everybodytalksabout's incriminating statements. Because we hold Everybodytalksabout's Sixth Amendment right to assistance of counsel was violated, we do not decide Everybodytalksabout's Fifth Amendment claim.

I. FACTUAL AND PROCEDURAL HISTORY
¶ 3 The parties do not dispute the essential facts of this case. In February 1997, the State charged Everybodytalksabout and Phillip Lopez jointly with the crime of first degree murder for stabbing Rigel Jones to death during the course of a robbery. State v. Everybodytalksabout, 131 Wash.App. 227, 231, 126 P.3d 87 (2006). The court declared a mistrial as to Everybodytalksabout because the State discovered that some of the testimony presented at trial was perjured. Id. at 231, 126 P.3d 87.
¶ 4 In July 1997, the State proceeded against only Everybodytalksabout for first degree and second degree murder while armed with a deadly weapon, and he was convicted. State v. Everybodytalksabout, 145 Wash.2d 456, 460, 39 P.3d 294 (2002). On July 29, 1997, the trial court ordered a presentence investigation report pursuant to CrR 7.1(a). Defense counsel was copied on the order. Diane Navicky, a CCO with DOC, prepared the report.
¶ 5 As part of her routine procedure for preparation of the presentence investigation report, Navicky interviewed Everybodytalksabout in the King County Jail on August 21, 1997. She did not contact Everybodytalksabout's attorney before conducting the interview, nor did she know if Everybodytalksabout had advance notification of the date of the interview. Report of Proceedings (RP) (Oct. 16, 2003)[3] at 70-71, 74.
¶ 6 After asking some preliminary questions, Navicky invited Everybodytalksabout to talk about his offense. In her presentence investigation report, Navicky wrote that Everybodytalksabout "admit[ted] that he assisted in the robbery but would not comment any further." Ex. 1, at 4. He also "stated that he was not the one who murdered Rigel Jones." Id. Once the interview started to focus on Everybodytalksabout's offense, however, he abruptly ended it, saying, "`I don't want to talk about this any more.'" RP (Oct. 16, 2003) at 50; Clerk's Papers (CP) at 854. Navicky did not attempt to detain Everybodytalksabout or continue the interview. Everybodytalksabout was sentenced to a maximum term of life and community placement for two years. Everybodytalksabout, 145 Wash.2d at 460, 39 P.3d 294.
¶ 7 Everybodytalksabout filed a notice of appeal from his second trial on September 29, 1997, and in November 2000, Division One affirmed in an unpublished opinion. Id. Everybodytalksabout petitioned this court for review, and in February 2002, we reversed, finding that the trial court erred in admitting evidence demonstrating Everybodytalksabout's leadership qualities. Id. at 481, 39 P.3d 294.
¶ 8 The State proceeded against Everybodytalksabout a third time in December 2003. At the CrR 3.5 hearing, Navicky testified about Everybodytalksabout's statements to her at the presentence interview. Everybodytalksabout moved to exclude the statements, but the trial judge ruled them admissible. In its oral findings, the court concluded that Everybodytalksabout's Sixth Amendment rights were not violated because Navicky had no reason to believe Everybodytalksabout would make any incriminating *695 statements, and Navicky did not take any action that was deliberately designed to elicit an incriminating statement. RP (Nov. 6, 2003) at 20-24.
¶ 9 Navicky testified at Everybodytalksabout's third trial. Everybodytalksabout was convicted of first degree and second degree murder, and he appealed.[4]Everybodytalksabout, 131 Wash.App. at 230-31, 126 P.3d 87. Division One affirmed, concluding that Everybodytalksabout's Sixth Amendment rights were not violated because although the presentence interview constituted a critical stage of the proceeding, due to the fact that Everybodytalksabout's appeal was pending, Navicky did not "deliberately elicit" his statements. Id. at 237-39, 126 P.3d 87.
¶ 10 We granted Everybodytalksabout's petition for review. State v. Everybodytalksabout, 158 Wash.2d 1019, 149 P.3d 377 (2006).

II. ISSUE
¶ 11 Did Navicky violate Everybodytalksabout's Sixth Amendment right to assistance of counsel?

III. ANALYSIS
¶ 12 The Sixth Amendment guaranty of assistance of counsel attaches when the State initiates adversarial proceedings against a defendant. Brewer v. Williams, 430 U.S. 387, 401, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). After the right has attached, a government agent may not interrogate a defendant and use incriminating statements the defendant made in the absence of or without waiver of counsel. Id. at 401-04, 97 S.Ct. 1232. The accused need not make an affirmative request for assistance of counsel. Id. at 404, 97 S.Ct. 1232.
¶ 13 The right to assistance of counsel is specific to a particular offense and protects the accused throughout a criminal prosecution and following conviction. McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991). It applies to every "`critical stage' of the proceedings." State v. Tinkham, 74 Wash.App. 102, 109, 871 P.2d 1127 (1994) (quoting United States v. Wade, 388 U.S. 218, 224-27, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967)). The United States Supreme Court has interpreted the right to apply "whenever necessary to assure a meaningful `defence.'" Wade, 388 U.S. at 225, 87 S.Ct. 1926.
¶ 14 Courts apply the "deliberately elicited" standard in determining whether a government agent has violated a defendant's Sixth Amendment right to assistance of counsel. Fellers v. United States, 540 U.S. 519, 524, 124 S.Ct. 1019, 157 L.Ed.2d 1016 (2004); Kuhlmann v. Wilson, 477 U.S. 436, 459, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986); In re Pers. Restraint of Benn, 134 Wash.2d 868, 911, 952 P.2d 116 (1998). The Sixth Amendment "deliberately elicited" standard has been expressly distinguished from the Fifth Amendment "custodial-interrogation" standard. Fellers, 540 U.S. at 524, 124 S.Ct. 1019.
¶ 15 "`[T]he Sixth Amendment provides a right to counsel . . . even when there is no interrogation and no Fifth Amendment applicability.'" Id. (alterations in original) (quoting Michigan v. Jackson, 475 U.S. 625, 632 n. 5, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986)). "[T]he Sixth Amendment is not violated whenever  by luck or happenstance  the State obtains incriminating statements from the accused after the right to counsel has attached." Maine v. Moulton, 474 U.S. 159, 176, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985). The Sixth Amendment is also not violated if the government agent "made `no effort to stimulate conversations about the crime charged.'" Kuhlmann v. Wilson, 477 U.S. 436, 442, 106 S.Ct. 2616, 91 L.Ed.2d 364 (alteration in original) (quoting United States v. Henry, 447 U.S. 264, 271 n. 9, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980)). To show that his Sixth Amendment rights were violated, Everybodytalksabout's must show that Navicky made "some effort to `stimulate conversations about the crime charged.'" Randolph v. California, 380 F.3d 1133, 1144 (9th *696 Cir.2004) (quoting Henry, 447 U.S. at 271 n. 9, 100 S.Ct. 2183).
¶ 16 The State concedes that Navicky is a government agent. Suppl. Br. of Resp't at 10. Thus, we need resolve only two questions in determining whether Everybodytalksabout's Sixth Amendment rights were violated. First, whether the presentence interview constituted a "critical stage of the proceedings." Second, whether Navicky "deliberately elicited" Everybodytalksabout's statements.
A. Critical stage of the proceedings
¶ 17 Everybodytalksabout claims that "[c]onsidering the gravity of what was at stake," and the fact that his statements were used at retrial, "the presentence interview [was] a critical stage of the proceedings." Suppl. Br. of Pet'r at 19-20 (first alteration in original) (citing Everybodytalksabout, 131 Wash.App. at 237, 126 P.3d 87). The State concedes that the "sentencing hearing" is a critical stage of the proceedings. Suppl. Br. of Resp't at 21 (citing Tinkham, 74 Wash. App. at 109-10, 871 P.2d 1127 (citing Gardner v. Florida, 430 U.S. 349, 358, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977))). It also does not directly challenge the Court of Appeals' conclusion that the presentence interview in this case was a critical stage of the proceeding.[5] But it cites a series of federal cases for the general proposition that a presentence interview does not constitute a critical stage for Sixth Amendment purposes, emphasizing the neutral role of the probation officer in the presentence interview process. Suppl. Br. of Resp't at 21-22 (citing United States v. Jackson, 886 F.2d 838 (7th Cir.1989); Brown v. Butler, 811 F.2d 938 (5th Cir.1987)).
¶ 18 As the State notes, some federal courts have concluded that a presentence interview does not constitute a critical stage of the proceeding, but only if the interview is conducted by a probation officer for sentencing purposes and the interview is nonadversarial in nature. For example, the Jackson court noted the "district judge's use of a defendant's statement to a probation officer . . . is markedly unlike the prosecutor's adversarial use of a defendant's pretrial statement to a psychiatrist to carry the state's burden of proof before a jury." 886 F.2d at 844. The court commented that because the defendant's statement was used only by the sentencing judge, the presentence interview was not a critical stage of the proceeding. Id. Similarly, information obtained by probation officers in the presentence interview in Brown was used only for sentencing purposes, not by prosecutors in adversarial proceedings. Brown, 811 F.2d at 941; see also Baumann v. United States, 692 F.2d 565, 578 (9th Cir.1982). In contrast, the presentence interview here was ultimately adversarial because although Everybodytalksabout's statements aided the court in determining his sentence after his second trial, it also provided crucial evidence used at his third trial.
¶ 19 Moreover, at the time of the presentence interview, Everybodytalksabout was still "`faced with a phase of the adversary system' and was `not in the presence of [a] perso[n] acting solely in his interest.'" Estelle v. Smith, 451 U.S. 454, 467, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) (alterations in original) (quoting Miranda v. Arizona, 384 U.S. 436, 469, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)). Estelle involved a criminal defendant denied advice of counsel as to whether he should submit to a pretrial psychiatric examination about his future dangerousness. Id. at 458 n. 5, 459, 101 S.Ct. 1866. The psychiatrist who conducted the examination ultimately testified about the defendant's statements during the penalty phase of his trial. Id. at 458-60, 101 S.Ct. 1866. The *697 United States Supreme Court held that a defendant should be provided with assistance of counsel during the penalty phase of his trial because "`[i]t is central to [the Sixth Amendment] principle that in addition to counsel's presence at trial, the accused is guaranteed that he need not stand alone against the State at any stage of the prosecution.'" 451 U.S. at 470, 101 S.Ct. 1866 (emphasis added) (alteration in original) (quoting Wade, 388 U.S. at 226-27, 87 S.Ct. 1926). The court noted that defendant's counsel were not "notified in advance that the psychiatric examination would encompass the issue of their client's future dangerousness, and [the defendant] was denied the assistance of his attorneys in making the significant decision of whether to submit to the examination and to what end the psychiatrist's findings could be employed."[6]Id. 470-71, 87 S.Ct. 1926 (footnote omitted). As in Estelle, Everybodytalksabout's counsel was not aware that the presentence interview would encompass questions about the crime that Everybodytalksabout had been convicted and Everybodytalksabout was denied his counsel's assistance in determining whether to submit to the interview.
¶ 20 The Court of Appeals also overlooked a Ninth Circuit Court of Appeals case that, while not binding, is instructive and squarely addresses Everybodytalksabout's unique circumstances. Cahill v. Rushen, 678 F.2d 791 (9th Cir.1982). Cahill involved a man arrested on suspicion of murder who promised a sheriff's captain that he would confess if convicted. Id. at 792. After Cahill's conviction, and without offering Cahill the opportunity to consult with counsel, giving him Miranda warnings, or informing his attorney of the meeting, the sheriff's captain obtained the promised confession. Id. at 793. When Cahill's conviction was overturned on appeal, the State used Cahill's confession in his retrial. Id. Cahill claimed the confession was inadmissible in the second trial because the sheriff's captain had violated his Sixth Amendment right to assistance of counsel. Id. The court agreed, holding the fact that a defendant's conviction is not yet final does not create "a temporal hiatus in the right to counsel." Id. at 795. Emphasizing the narrowness of its ruling, it concluded "any incriminating statements deliberately elicited by the State without at least affording defendant the opportunity to consult with counsel, must be excluded at any subsequent trial on the charges for which defendant [wa]s then under indictment." Id. The court further noted "[e]ven a brief consultation with his attorney would have corrected Cahill's erroneous impression that a confession at that point could have no adverse consequences." Id. at 794. As in Cahill, the fact that Everybodytalksabout had been convicted at the time of the presentence interview did not alleviate his need for counsel. Even a brief consultation with his attorney could have alerted him to the consequences of discussing questions about the crime with which he was charged.
¶ 21 We conclude that because the statements Everybodytalksabout made in his presentence interview were used for the adversarial purpose of convicting him in a subsequent trial, the presentence interview was a critical stage of the proceeding.
B. Deliberately elicited
¶ 22 Everybodytalksabout argues that Navicky deliberately elicited his incriminating statements by inviting him to describe his version of the offense because she understood that an admission of complicity even at the presentencing stage could have "far-reaching" effects. Suppl. Br. of Pet'r at 21. He contends she "`knew or should have known' a further inquiry into Everybodytalksabout's `version of the offense' would be likely to elicit an incriminating response." Id. at 21-22.
*698 ¶ 23 The State argues that in order for Navicky's actions to be deliberate, they must have been "premeditated" and "intentional," and Navicky's actions were neither because she acted in a neutral role rather than on behalf of "law enforcement or the prosecutor's office." Suppl. Br. of Resp't at 23. The State also cites the trial court's conclusion that Navicky did not use secretive or evasive tactics in conducting the interview. Id. at 24-25.
¶ 24 The appellate court concluded that Navicky did not deliberately elicit Everybodytalksabout's incriminating statements because she merely asked for Everybodytalksabout's version of the offense "within a series of impartial questions," and "created a situation where Everybodytalksabout could proclaim his innocence once more." Everybodytalksabout, 131 Wash.App. at 239, 126 P.3d 87.
¶ 25 The Court of Appeals applied the incorrect analysis. Regardless of whether all Navicky's other questions in the interview were impartial, the pertinent question asked about Everybodytalksabout's version of the offense for which he had been charged and convicted. Under Sixth Amendment analysis, the government agent need only "`stimulate conversations about the crime charged'" to deliberately elicit incriminating statements. Randolph, 380 F.3d at 1144 (quoting Henry, 447 U.S. at 271 n. 9, 100 S.Ct. 2183). Navicky's questions were more than just an effort to stimulate conversation, and they were clearly about the crime charged. She explicitly asked Everybodytalksabout to discuss the very crime for which he was charged and convicted, and the State subsequently used Everybodytalksabout's own words to retry him for the same crime.
¶ 26 We conclude that because Navicky stimulated conversations about the crime for which Everybodytalksabout was charged and convicted, Navicky deliberately elicited Everybodytalksabout's incriminating statements.

IV. CONCLUSION
¶ 27 We reverse the Court of Appeals and remand for retrial without Everybodytalksabout's incriminating statements. We hold the State violated Everybodytalksabout's Sixth Amendment right to assistance of counsel because the presentence interview constituted a critical stage of the proceedings and Navicky deliberately elicited Everybodytalksabout's statements.
WE CONCUR: GERRY L. ALEXANDER, C.J., and TOM CHAMBERS, CHARLES W. JOHNSON, SUSAN OWENS, BARBARA A. MADSEN, RICHARD B. SANDERS, JAMES M. JOHNSON, and BOBBE J. BRIDGE, JJ.
NOTES
[1] Everybodytalksabout's Fifth Amendment claim is based on the clause that states "[n]o person shall be . . . compelled in any criminal case to be a witness against himself."
[2] Everybodytalksabout's Sixth Amendment claim is based on the clause that states "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the assistance of counsel for his defense."
[3] There are 29 nonsequentially paginated volumes in the report of proceedings.
[4] The second degree murder charge was merged with the first degree murder charge for sentencing purposes.
[5] The Court of Appeals based its conclusion on the fact that Everybodytalksabout's appeal was pending and his statements were used to convict him in a subsequent proceeding. Everybodytalksabout, 131 Wash.App. at 237, 126 P.3d 87. However, as noted, supra, at 694, Everybodytalksabout's appeal was not pending at the time of the presentence interview. The presentence interview took place on August 21, 1997, but Everybodytalksabout did not file his notice of appeal until September 29, 1997. The trial court also noted there was no evidence that Navicky was aware that Everybodytalksabout intended to appeal his conviction at the time of the interview. RP (Nov. 6, 2003) at 24. Thus, the Court of Appeals erred in concluding that Everybodytalksabout's pending appeal was the basis for concluding the presentence interview was a critical stage of the proceedings.
[6] Federal courts have applied Estelle narrowly on the issue of whether a presentence interview constitutes a critical stage of the proceeding, distinguishing Estelle's bifurcated trial and capital sentencing proceedings from routine sentencing proceedings. See Baumann, 692 F.2d at 576; Brown, 811 F.2d at 941; see also Jackson, 886 F.2d at 843-46. However, as we have already noted, supra, at 696, the statements obtained in Baumann, Brown, and Jackson were used solely for sentencing purposes, not for subsequent adversarial trial proceedings against the defendants, and those cases are readily distinguishable from this case. Baumann, 692 F.2d at 576-78; Brown, 811 F.2d at 941; Jackson, 886 F.2d at 844.