FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2013 APR -1 AM 8: 45



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 67409-9-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| RAYMEL JABAR CURRY, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 1, 2013 |
| | ) | |

LEACH, C.J. — Raymel Curry appeals his conviction for second degree assault. He contends that the State violated his Sixth Amendment right to counsel when a psychologist questioned him without his counsel at an intake interview incident to his admission to Western State Hospital for a psychiatric evaluation. Because the psychologist did not deliberately elicit any statement about the crime charged in the intake interview, we reject this claim. Curry also challenges several proposed jury instructions. Because his case was tried to the court, we also reject these challenges and affirm.

## FACTS

On September 17, 2010, Raymel Curry assaulted a passenger exiting a King County Metro bus. Before the assault, Curry had been loud and disruptive,

talking, cursing, and rapping aloud to himself. The bus's security cameras made an audio and video recording of this behavior. The video footage shows Curry yelling and making menacing hand gestures at the cameras and threatening the victim. As the victim exits the front door of the bus, Curry exits behind him, punches him, and runs away.

The State charged Curry with second degree assault, and Curry asserted an insanity defense. Pursuant to a court order, Western State Hospital (WSH) admitted him for psychiatric evaluation on February 23, 2011. A multidisciplinary team of mental health providers, led by Dr. Amber Simpler, conducted an intake assessment with Curry on February 24. This interview allows the doctors to develop a working diagnosis of the patient's mental condition and to identify safety concerns for the patient and staff. Simpler asked Curry standard intake questions about his social history, substance abuse, and psychiatric and medical history, as well as specific questions about symptoms of psychosis, such as paranoia and hallucinations. Curry indicated that while he used several different drugs, his favorite was sherm, a type of tobacco or marijuana cigarette dipped in formaldehyde or PCP (phencyclidine). He stated that he usually smoked four "sticks" a day and that he had a special ability to hear other people's thoughts that only occurred when he was high on sherm. Simpler did not ask Curry about any details of the crime, and Curry did not volunteer any.

The court-ordered forensic evaluation took place on March 9 with Curry's defense counsel present. Simpler also conducted that evaluation, which her supervisor, Dr. Ray Hendrickson, attended. To prepare for the forensic evaluation, Simpler reviewed a copy of the discovery materials. She then realized that some overlap existed between WSH's standard intake questions and the specifics of Curry's intoxication on the day of the attack. During the forensic evaluation, Simpler asked Curry focused questions about his sherm use on the day of the assault and how it affected his thinking at the time. Her final forensic mental health report concluded,

> Mr. Curry reported he smoked two dipped cigarettes or "sherm" within two hours of getting on the Metro bus. He related he experienced hallucinations on the bus in the form of hearing the victim's thoughts that he perceived as threatening. Mr. Curry related these hallucinatory experiences only occur when he has smoked sherm. Because his hallucinations are directly induced by his voluntary ingestion of sherm, it would appear that insanity as a defense is not a viable strategy for Mr. Curry at this time.

Curry moved to dismiss the charges or suppress Simpler's report and testimony. Simpler and Hendrickson testified at the hearing. Simpler stated that the drug use questions are necessary for safety concerns and that she could not have avoided them at the intake, even if she had known that drug use was an issue in the crime. She also testified that in writing her forensic report, she considers all of the information gathered during the patient's stay, including both the forensic evaluation and the intake assessment. She noted that based solely

upon the March 9 interview, she would have reached the same conclusion about Curry's mental state. Hendrickson agreed that a psychologist reviews all aspects of the patient's behavior during the commitment as part of a final evaluation. The court denied the motion, and the case proceeded to a bench trial. Hendrickson testified for the State, and the court convicted Curry of assault. He appeals.

## STANDARD OF REVIEW

We review a trial court's decision on the admissibility of evidence under an abuse of discretion standard. The trial court's decision will be upheld unless it is manifestly unreasonable or is based upon untenable grounds or reasons.[1] The trial court's credibility determinations are not subject to review on appeal.[2] However, whether a proceeding is a "critical stage" is a question of law subject to de novo review.[3] Likewise, whether the State deliberately elicited incriminating statements from Curry is also a legal question, which we review de novo.[4]

## ANALYSIS

To prevail on his Sixth Amendment claim, Curry must demonstrate two things—that the intake interview constituted a "'critical stage of the proceedings'" and that the psychologist who questioned him at the intake interview

---

[1] State v. Stenson, 132 Wn.2d 668, 701, 940 P.2d 1239 (1997).
[2] In re Pers. Restraint of Benn, 134 Wn.2d 868, 910, 952 P.2d 116 (1998).
[3] State v. Irby, 170 Wn.2d 874, 880, 246 P.3d 796 (2011).
[4] State v. Everybodytalksabout, 131 Wn. App. 227, 237-38, 126 P.3d 87 (2006), rev'd on other grounds, 161 Wn.2d 702, 166 P.3d 693 (2007).

"'deliberately elicited'" information about the crime charged.[5] Because the psychologist did not deliberately elicit information about the crime charged, we reject Curry's claim without deciding if the intake interview was a critical stage of the proceeding.

Curry pleaded not guilty by reason of insanity. To establish an insanity defense, the defendant must prove by a preponderance of the evidence that

> [a]t the time of the commission of the offense, as a result of mental disease or defect, the mind of the actor was affected to such an extent that:
> (a) He was unable to perceive the nature and quality of the act with which he is charged; or
> (b) He was unable to tell right from wrong with reference to the particular act charged.[6]

Under RCW 10.77.030, "[n]o condition of mind proximately induced by the voluntary act of a person charged with a crime shall constitute insanity." This includes mental conditions brought about by voluntary intoxication.[7]

When a defendant claims insanity, the State may require him to submit to an expert psychiatric evaluation.[8] That occurred here. Curry contends that the

---

[5] Everybodytalksabout, 161 Wn.2d at 709.

[6] Former RCW 9A.12.010 (1975).

[7] According to former RCW 9A.16.090 (1975),
No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his condition, but whenever the actual existence of any particular mental state is a necessary element to constitute a particular species or degree of crime, the fact of his intoxication may be taken into consideration in determining such mental state.

intake interview before his formal psychiatric evaluation at WSH violated his Sixth Amendment right to counsel. He claims that the psychologist who questioned him, Simpler, deliberately elicited information about the crime during the intake. We disagree.

Once the constitutional right to counsel has attached, the State violates the Sixth Amendment only when the State "deliberately elicit[s]" incriminating statements from the individual in defense counsel's absence.[9] The State does so when it purposely stimulates conversation about the crime.[10] In the intake interview, Simpler asked Curry about his past and present mental and physical health and about his past and present drug use. She asked follow-up questions about every drug Curry said he had used, including sherm, MDMA, cocaine, and hallucinogenic mushrooms. Curry volunteered that sherm was his favorite drug and that when he was high on sherm, he believed that he could hear people's thoughts. He denied experiencing any other auditory or visual hallucinations. Curry makes no claim that Simpler questioned him about the crime during the intake interview.

---

[8] State v. Hutchinson, 135 Wn.2d 863, 878, 959 P.2d 1061 (1998) (Hutchinson III).

[9] Massiah v. United States, 377 U.S. 201, 206, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964); Everybodytalksabout, 161 Wn.2d at 708-09.

[10] Everybodytalksabout, 161 Wn.2d at 708-09.

The trial court found some overlap in the information gained during the intake interview and the subsequent forensic evaluation but also found that Simpler asked the intake questions for valid safety purposes. Additionally, the court found that she did not ask about or intentionally encourage Curry to discuss any details of the crime charged. We agree with this assessment. The intake interview here was not an adversarial proceeding, and Simpler did not elicit or receive any information about the specifics of the crime.[11] The State's actions did not violate Curry's Sixth Amendment right, and the trial court did not abuse its discretion by denying Curry's suppression motion.

In a statement of additional grounds, Curry challenges the court's failure to provide jury instructions. However, the parties tried this case to a judge without a jury. "In a bench trial, no jury instructions are required."[12] Indeed, there is no jury to instruct. Thus, Curry's claims fail.

---

[11] In fact, Simpler did not realize that Curry's drug use played a role in the crime until the day before the forensic evaluation when she received a copy of the discovery information and the defense expert's report.

[12] In re Pers. Restraint of Heidari, 159 Wn. App. 601, 609, 248 P.3d 550 (2011), aff'd, 174 Wn.2d 288, 274 P.3d 366 (2012).

CONCLUSION

Because Simpler did not deliberately elicit information about the assault during Curry's intake interview, his Sixth Amendment challenge fails. Because Curry elected a bench trial, the court did not require jury instructions. We affirm.

_Leach, C.J._

WE CONCUR:

_Cox, J._