FILED
COURT OF APPEALS
DIVISION II

2013 DEC 10 AM 9: 53

STATE OF WASHINGTON

BY_____
DEPUTY

## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 42786-9-II |
| Respondent, | |
| v. | |
| KEVAN M. VANSYCKLE, | UNPUBLISHED OPINION |
| Appellant. | |

PENOYAR, J. – Kevan M. Vansyckle appeals his conviction of three counts of first degree child molestation, arguing that the trial court erred by imposing a community custody condition that restricts his computer use and internet access and by finding that he has the ability to pay the legal financial obligations (LFO's) imposed in his judgment and sentence. Vansyckle raises additional claims of error in his statement of additional grounds (SAG). Because the Department of Corrections (DOC) recommended the community custody condition at issue to reduce Vansyckle's risk to the community, and because he did not object to the court's finding that he has the ability to pay his LFO's, we reject these claims of error as well as Vansyckle's SAG claims. We affirm his convictions.

## FACTS

M.D. met Vansyckle in 2007 when she was seven or eight years old. At the time, M.D. was living with her mother and her mother's boyfriend, who was Vansyckle's father. Vansyckle recently had been released from a juvenile detention center following his conviction of two counts of first degree child molestation and one count of indecent exposure.

On the evening that M.D. met Vansyckle, they stayed up in the living room after her parents went to bed. Vansyckle asked M.D. to come over and sit on the arm of the chair while he was using the computer. After M.D. complied, Vansyckle unzipped her pants and touched her sexually. Vansyckle said he would stop if M.D. said "no," which she did. 2 Report of Proceedings (RP) at 203. M.D. and Vansyckle then played a board game. During the game, he again had sexual contact with M.D. when she stretched to move her board piece.

A second incident occurred when Vansyckle visited M.D.'s home with his 16-year-old girl friend. M.D. was playing chase with Vansyckle when he pulled her into her bedroom. Vansyckle had sexual contact with M.D. and forced her to have sexual contact with him. A third incident of sexual touching occurred when Vansyckle came into M.D.'s bedroom while she was doing homework.

M.D. eventually told her mother that Vansyckle had been touching her in the "wrong places." 2 RP at 186. The next day, M.D. wrote a note to her school counselor about Vansyckle. When the counselor met with M.D., she described Vansyckle's inappropriate contact. The counselor reported the conversation to the sheriff, and M.D. subsequently repeated her allegations to a forensic interviewer and a mental health therapist.

The State charged Vansyckle by amended information with three counts of first degree child molestation and one count of first degree child rape or, in the alternative, first degree child molestation. After Vansyckle waived his right to a jury, the trial court ruled that his prior convictions were admissible under former RCW 10.58.090 (2008) and under ER 404(b) as evidence of a common scheme or plan.

M.D. testified about her allegations, as did her mother, two therapists, her counselor, and a nurse practitioner. The tape of M.D.'s forensic interview was published in open court as well. The trial court ruled that the child hearsay evidence was admissible.

In addition, several witnesses testified about Vansyckle's prior offenses. The psychologist who treated Vansyckle following his release from juvenile detention then testified that his treatment rules prohibited contact with minors that was not approved in advance and required Vansyckle to report any incidental contact. The psychologist testified that he never gave permission for Vansyckle to have contact with M.D. with or without his girl friend's supervision, and that Vansyckle never reported such contact. Vansyckle's parole counselors added that they never gave Vansyckle permission to travel outside the county to see his father or to have contact with a minor, as his parole conditions also required, and that Vansyckle never reported his travel or contact. A polygraph examiner testified that Vansyckle reported twice engaging in sexual contact with his 17-year-old stepsister while he was on parole.

Several witnesses testified in Vansyckle's defense, but the trial court found him guilty of three counts of first degree child molestation. The presentence investigation (PSI) report revealed that during a prior evaluation, Vansyckle had disclosed 16-18 possible victims. Another former evaluator believed that Vansyckle met the statutory requirements for a civil commitment referral. The PSI report also revealed that Vansyckle had failed 4 of 5 polygraphs that addressed unsupervised and sexual contact with minors. The PSI report recommended that the trial court impose all of the conditions listed in the attached Appendix H: "Recommended conditions in Appendix H will enable [DOC] to effectively monitor and supervise Mr. Vansyckle in the community. Intervention applied to these areas [will] assist in reducing potential risk to

community safety." Clerk's Papers (CP) at 86. One of these conditions prohibited internet or computer access without court approval.

During sentencing, the prosecutor asked the trial court to impose all of the conditions in Appendix H, which he described as "standard required conditions for this type of offense including geographical restrictions, associational restrictions." 8 RP at 1293. The prosecutor stated that the treatment providers and probation officers who testified had shown that Vansyckle could not be monitored in the community. "[H]e will not comply with probation conditions; he will not comply with supervision; he will not admit the types of behaviors he needs to admit in order that people in the community can be safe." 8 RP at 1298.

Vansyckle's attorney then complained that the community corrections officer who wrote the PSI report had interviewed Vansyckle in his absence even though he had told the court he wanted to be present. Defense counsel asked the court to delete all of Vansyckle's statements from the PSI report, but the court declined, stating twice that its sentencing decision would be based solely on the evidence introduced at trial.

After the defense accepted the amount of restitution the State requested, the trial court imposed other legal financial obligations (LFO's) without objection. Finding 2.5 in the judgment and sentence included boilerplate language stating that the defendant had the ability to pay the LFO's imposed. The judgment and sentence also included Appendix H and its condition prohibiting computer and internet access without court approval. The trial court sentenced Vansyckle to concurrent sentences of 198 months to life, with lifetime community custody.

4

## ANALYSIS

I.    COMMUNITY CUSTODY CONDITION

A trial court may only impose a sentence authorized by statute. *In re Postsentence Review of Leach*, 161 Wn.2d 180, 184, 163 P.3d 782 (2007). An erroneous sentence may be challenged for the first time on appeal, and a defendant has standing to challenge allegedly erroneous sentencing conditions even though he has not yet been charged with violating them. *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008); *State v. Riles*, 86 Wn. App. 10, 14-15, 936 P.2d 11 (1997), *affirmed*, 135 Wn.2d 326, 957 P.2d 655 (1998). We review conditions of community placement to determine whether their imposition is manifestly unreasonable or based on untenable grounds. *See State v. Vant*, 145 Wn. App. 592, 602-03, 186 P.3d 1149 (2008) (condition may be manifestly unreasonable if trial court lacked authority to impose it).

The statutes in effect when Vansyckle committed his offenses required the trial court to impose the following conditions unless it waived them:

(a)  The offender shall report to and be available for contact with the assigned community corrections officer as directed;
(b)  The offender shall work at department-approved education, employment, or community restitution, or any combination thereof;
(c)  The offender shall not possess or consume controlled substances except pursuant to lawfully issued prescriptions;
(d)  The offender shall pay supervision fees as directed by the department; and
(e)  The residence location and living arrangements shall be subject to the prior approval of the department during the period of community placement.

Former RCW 9.94A.700(4) (2003); *see* RCW 9.94A.345 (sentence imposed under Sentencing Reform Act shall be determined in accordance with law in effect when offense was committed).

In addition, former RCW 9.94A.700(5) permitted a sentencing court to impose any or all of the following conditions of community custody:

(a) The offender shall remain within, or outside of, a specified geographical boundary;
(b) The offender shall not have direct or indirect contact with the victim of the crime or a specified class of individuals;
(c) The offender shall participate in crime-related treatment or counseling services;
(d) The offender shall not consume alcohol; or
(e) The offender shall comply with any crime-related prohibitions.

A trial court also could order a defendant to participate in rehabilitative programs or to otherwise perform affirmative conduct reasonably related to the circumstances of the offense, the offender's risk of reoffending, or the safety of the community. Former RCW 9.94A.712(6)(a)(i) (2006).

Vansyckle argues that the condition restricting his computer use and internet access was permissible only if it constituted a crime-related prohibition under former RCW 9.94A.700(5)(e). Crime-related prohibitions allow the sentencing court to prohibit conduct that relates directly to the circumstances of the crime for which the offender has been convicted. *State v. Berg*, 147 Wn. App. 923, 942, 198 P.3d 529 (2008), *abrogated on other grounds, State v. Mutch*, 171 Wn.2d 646, 254 P.3d 803 (2011). No causal link need be established between the condition imposed and the crime committed, so long as the condition relates to the circumstances of the crime. *State v. Llamas-Villa*, 67 Wn. App. 448, 456, 836 P.2d 239 (1992). Vansyckle contends that the condition at issue must be stricken because it is in no way related to the circumstances of his offenses. *See State v. O'Cain*, 144 Wn. App. 772, 775, 184 P.3d 1262 (2008) (striking internet access condition because there was no evidence that it was crime related).

The State acknowledges that the condition restricting computer use and internet access is not crime related. It argues, however, that this condition is authorized under RCW 9.94A.704(2)(a), which provides that DOC shall assess an offender's risk of reoffense and may establish additional conditions of community custody based on the risk to community safety.[1] The trial court must order the offender to comply with any conditions imposed by DOC under RCW 9.94A.704. RCW 9.94A.703(1)(b); *see also* 13B SETH A. FINE, WASHINGTON PRACTICE: CRIMINAL LAW, § 3607, at 183-84 (2012-13) (DOC-imposed community custody conditions are mandatory).

In the PSI report, DOC recommended imposing the restriction on Vansyckle's computer use and internet access so that it could effectively monitor him and reduce his potential risk to the community. During sentencing, the State asked the court to impose the DOC-recommended conditions so that Vansyckle could be more effectively monitored in the community. After asserting that its role was to protect the community, the trial court imposed the recommended conditions, including the restriction on Vansyckle's computer use and internet access. Under the circumstances, this condition was not manifestly unreasonable. We affirm the imposition of this community custody condition.

II.     LEGAL FINANCIAL OBLIGATIONS

Vansyckle argues next that the trial court erred by finding that he had the ability to pay the LFO's imposed without conducting any inquiry into his financial circumstances.

---

[1] Although RCW 9.94A.704 was enacted after Vansyckle's offense range of June 15, 2007 through June 3, 2009, the legislature intended it to apply to all sentences imposed after August 1, 2009, for any crimes committed before August 1, 2009. LAWS OF 2008, ch. 231 §§6-58. Vansyckle was sentenced on November 8, 2011.

The court imposed $2,000 in court-appointed attorney fees and defense costs, a $500 victim penalty assessment, $484.41 in restitution, a $200 filing fee, and a $100 DNA testing fee. Except for the attorney fees and the amount of restitution, these fees were mandatory. RCW 7.68.035(1)(a); RCW 43.43.7541; RCW 36.18.020(2)(h). Vansyckle agreed to the State's restitution request and did not object to the court's imposition of $2,000 in attorney fees and costs. Nor did he object to the written finding regarding his ability to pay. Consequently, he has waived his challenge to the court's finding regarding his ability to pay the LFO's imposed in his judgment and sentence. RAP 2.5(a); *State v. Snapp*, 119 Wn. App. 614, 626 n.8, 82 P.3d 252 (2004).

III.    SAG ISSUES

Vansyckle's SAG raises four issues. He argues first that he was unable to properly defend himself against the charges because his private investigator could not be located on the day of trial and because the court refused to grant a continuance until the investigator could be found. There is no reference in the record to any private investigator or to any related request for a continuance. Furthermore, Vansyckle does not describe any evidence or defense theory that an investigator might have produced if located. We decline to discuss this claim of error further.

Vansyckle next contends that the evidence of his criminal history was prejudicial. The trial court admitted this evidence under former RCW 10.58.090 and ER 404(b). Although former RCW 10.58.090 has since been declared unconstitutional, the court's admission of this evidence to prove a common scheme or plan under ER 404(b) remains valid. *State v. Gresham*, 173 Wn.2d 405, 423, 432, 269 P.3d 207 (2012). Evidence that falls within this rule is admissible if its probative value exceeds its prejudicial effect. *State v. Kennealy*, 151 Wn. App. 861, 886, 214 P.3d 200 (2009), *review denied*, 168 Wn.2d 1012 (2010). The fact that prior conviction

8

evidence is prejudicial does not bar its admission under ER 404(b), and we see no error in this regard.

Vansyckle also argues that the trial court and the prosecuting attorney would not allow the defense to test the credibility of any witnesses. The record does not support this claim, as it shows that defense counsel subjected several of the prosecution witnesses to rigorous cross examination in an effort to undermine their credibility.

Finally, Vansyckle contends that his Sixth Amendment right to counsel was violated when his attorney was not present during his presentence interview. The right to counsel attaches when the State initiates adversarial proceedings against the defendant. *State v. Everybodytalksabout*, 161 Wn.2d 702, 707, 166 P.3d 693 (2007) (citing *Brewer v. Williams*, 430 U.S. 387, 401, 97 S. Ct. 1232, 51 L. Ed. 2d 424 (1977)). This right applies to every critical stage of the proceedings. *Everybodytalksabout*, 161 Wn.2d at 708.

A presentence interview is a noncritical stage of the proceedings if the information obtained is used only for sentencing purposes. *United States v. Jackson*, 886 F.2d 838, 844 (7th Cir. 1989); *Baumann v. United States*, 692 F.2d 565, 578 (9th Cir. 1982). In *Everybodytalksabout*, however, the State used evidence obtained during a presentence investigation from an unrepresented defendant in a later trial against the same defendant. 161 Wn.2d at 706-07. Because the statements the defendant made during the presentence interview were used for the adversarial purpose of convicting him in a subsequent trial, the interview was a critical stage of the proceeding to which the right to counsel applied. *Everybodytalksabout*, 161 Wn.2d at 712.

The State did not use Vansyckle's disclosures during the presentence interview for purposes of a later prosecution, and the trial court did not consider those disclosures in sentencing him. Accordingly, the presentence interview did not constitute a critical phase of the proceeding, and the absence of defense counsel during that interview did not violate Vansyckle's rights under the Sixth Amendment.

Affirmed.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Penoyar, J.

We concur:

Maxa, J.

Verellen, J.