## FELLERS *v.* UNITED STATES

No. 02–6320.   Argued December 10, 2003—Decided January 26, 2004

O'CONNOR, J., delivered the opinion for a unanimous Court.

*Seth P. Waxman*, by appointment of the Court, 538 U. S. 997, argued the cause for petitioner. With him on the briefs was *Paul R. Q. Wolfson*.

*Deputy Solicitor General Dreeben* argued the cause for the United States. With him on the brief were *Solicitor General Olson, Assistant Attorney General Wray, John P. Elwood,* and *Joel M. Gershowitz.**

JUSTICE O'CONNOR delivered the opinion of the Court.

After a grand jury indicted petitioner John J. Fellers, police officers arrested him at his home. During the course of the arrest, petitioner made several inculpatory statements.

---

*\*Kent S. Scheidegger* and *Charles L. Hobson* filed a brief for the Criminal Justice Legal Foundation as *amicus curiae* urging affirmance.

*Alfred P. Carlton* and *Thomas C. Goldstein* filed a brief for the American Bar Association as *amicus curiae.*

He argued that the officers deliberately elicited these statements from him outside the presence of counsel, and that the admission at trial of the fruits of those statements therefore violated his Sixth Amendment right to counsel. Petitioner contends that in rejecting this argument, the Court of Appeals for the Eighth Circuit improperly held that the Sixth Amendment right to counsel was "not applicable" because "the officers did not interrogate [petitioner] at his home." 285 F. 3d 721, 724 (2002). We granted the petition for a writ of certiorari, 538 U. S. 905 (2003), and now reverse.

I

On February 24, 2000, after a grand jury indicted petitioner for conspiracy to distribute methamphetamine, Lincoln Police Sergeant Michael Garnett and Lancaster County Deputy Sheriff Jeff Bliemeister went to petitioner's home in Lincoln, Nebraska, to arrest him. App. 111. The officers knocked on petitioner's door and, when petitioner answered, identified themselves and asked if they could come in. *Ibid.* Petitioner invited the officers into his living room. *Ibid.*

The officers advised petitioner they had come to discuss his involvement in methamphetamine distribution. *Id.*, at 112. They informed petitioner that they had a federal warrant for his arrest and that a grand jury had indicted him for conspiracy to distribute methamphetamine. *Ibid.* The officers told petitioner that the indictment referred to his involvement with certain individuals, four of whom they named. *Ibid.* Petitioner then told the officers that he knew the four people and had used methamphetamine during his association with them. *Ibid.*

After spending about 15 minutes in petitioner's home, the officers transported petitioner to the Lancaster County jail. *Ibid.* There, the officers advised petitioner for the first time of his rights under *Miranda* v. *Arizona,* 384 U. S. 436 (1966), and *Patterson* v. *Illinois,* 487 U. S. 285 (1988). App. 112. Petitioner and the two officers signed a *Miranda* waiver

form, and petitioner then reiterated the inculpatory statements he had made earlier, admitted to having associated with other individuals implicated in the charged conspiracy, App. 29–39, and admitted to having loaned money to one of them even though he suspected that she was involved in drug transactions, *id.*, at 34.

Before trial, petitioner moved to suppress the inculpatory statements he made at his home and at the county jail. A Magistrate Judge conducted a hearing and recommended that the statements petitioner made at his home be suppressed because the officers had not informed petitioner of his *Miranda* rights. App. 110–111. The Magistrate Judge found that petitioner made the statements in response to the officers' "implici[t] questions," noting that the officers had told petitioner that the purpose of their visit was to discuss his use and distribution of methamphetamine. *Id.*, at 110. The Magistrate Judge further recommended that portions of petitioner's jailhouse statement be suppressed as fruits of the prior failure to provide *Miranda* warnings. App. 110–111.

The District Court suppressed the "unwarned" statements petitioner made at his house but admitted petitioner's jailhouse statements pursuant to *Oregon* v. *Elstad*, 470 U. S. 298 (1985), concluding petitioner had knowingly and voluntarily waived his *Miranda* rights before making the statements. App. 112–115.

Following a jury trial at which petitioner's jailhouse statements were admitted into evidence, petitioner was convicted of conspiring to possess with intent to distribute methamphetamine. Petitioner appealed, arguing that his jailhouse statements should have been suppressed as fruits of the statements obtained at his home in violation of the Sixth Amendment. The Court of Appeals affirmed. 285 F. 3d 721 (CA8 2002). With respect to petitioner's argument that the officers' failure to administer *Miranda* warnings at his home violated his Sixth Amendment right to counsel under

*Patterson, supra,* the Court of Appeals stated: *"Patterson* is not applicable here . . . for the officers did not interrogate [petitioner] at his home." 285 F. 3d, at 724. The Court of Appeals also concluded that the statements from the jail were properly admitted under the rule of *Elstad, supra.* 285 F. 3d, at 724 (" 'Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made' " (quoting *Elstad, supra,* at 309)).

Judge Riley filed a concurring opinion. He concluded that during their conversation at petitioner's home, officers "deliberately elicited incriminating information" from petitioner. 285 F. 3d, at 726–727. That "post-indictment conduct outside the presence of counsel," Judge Riley reasoned, violated petitioner's Sixth Amendment rights. *Id.,* at 727. Judge Riley nevertheless concurred in the judgment, concluding that the jailhouse statements were admissible under the rationale of *Elstad* in light of petitioner's knowing and voluntary waiver of his right to counsel. 285 F. 3d, at 727.

## II

The Sixth Amendment right to counsel is triggered "at or after the time that judicial proceedings have been initiated . . . 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " *Brewer* v. *Williams,* 430 U. S. 387, 398 (1977) (quoting *Kirby* v. *Illinois,* 406 U. S. 682, 689 (1972)). We have held that an accused is denied "the basic protections" of the Sixth Amendment "when there [is] used against him at his trial evidence of his own incriminating words, which federal agents . . . deliberately elicited from him after he had been indicted and in the absence of his counsel." *Massiah* v. *United States,* 377 U. S. 201, 206 (1964); cf. *Patterson, supra* (holding that the Sixth Amendment does not bar postindictment questioning in the absence of counsel if a defendant waives the right to counsel).

We have consistently applied the deliberate-elicitation standard in subsequent Sixth Amendment cases, see *United States* v. *Henry*, 447 U. S. 264, 270 (1980) ("The question here is whether under the facts of this case a Government agent 'deliberately elicited' incriminating statements ... within the meaning of *Massiah*"); *Brewer, supra,* at 399 (finding a Sixth Amendment violation where a detective "deliberately and designedly set out to elicit information from [the suspect]"), and we have expressly distinguished this standard from the Fifth Amendment custodial-interrogation standard, see *Michigan* v. *Jackson*, 475 U. S. 625, 632, n. 5 (1986) ("[T]he Sixth Amendment provides a right to counsel ... even when there is no interrogation and no Fifth Amendment applicability"); *Rhode Island* v. *Innis*, 446 U. S. 291, 300, n. 4 (1980) ("The definitions of 'interrogation' under the Fifth and Sixth Amendments, if indeed the term 'interrogation' is even apt in the Sixth Amendment context, are not necessarily interchangeable"); cf. *United States* v. *Wade*, 388 U. S. 218 (1967) (holding that the Sixth Amendment provides the right to counsel at a postindictment lineup even though the Fifth Amendment is not implicated).

The Court of Appeals erred in holding that the absence of an "interrogation" foreclosed petitioner's claim that the jailhouse statements should have been suppressed as fruits of the statements taken from petitioner at his home. First, there is no question that the officers in this case "deliberately elicited" information from petitioner. Indeed, the officers, upon arriving at petitioner's house, informed him that their purpose in coming was to discuss his involvement in the distribution of methamphetamine and his association with certain charged co-conspirators. 285 F. 3d, at 723; App. 112. Because the ensuing discussion took place after petitioner had been indicted, outside the presence of counsel, and in the absence of any waiver of petitioner's Sixth Amendment rights, the Court of Appeals erred in holding that the offi-

cers' actions did not violate the Sixth Amendment standards established in *Massiah, supra,* and its progeny.

Second, because of its erroneous determination that petitioner was not questioned in violation of Sixth Amendment standards, the Court of Appeals improperly conducted its "fruits" analysis under the Fifth Amendment. Specifically, it applied *Elstad* to hold that the admissibility of the jailhouse statements turns solely on whether the statements were "'knowingly and voluntarily made.'" 285 F. 3d, at 724 (quoting *Elstad,* 470 U. S., at 309). The Court of Appeals did not reach the question whether the Sixth Amendment requires suppression of petitioner's jailhouse statements on the ground that they were the fruits of previous questioning conducted in violation of the Sixth Amendment deliberate-elicitation standard. We have not had occasion to decide whether the rationale of *Elstad* applies when a suspect makes incriminating statements after a knowing and voluntary waiver of his right to counsel notwithstanding earlier police questioning in violation of Sixth Amendment standards. We therefore remand to the Court of Appeals to address this issue in the first instance.

Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*