[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 14, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-12440
Non-Argument Calendar

_____

D. C. Docket No. 03-80141-CR-WJZ

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTWAN LAVARUS LASTER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(June 14, 2006)**

Before TJOFLAT, ANDERSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Defendant-appellant Antwan Lavarus Laster appeals his conviction and

sentence for possession of a firearm by a convicted felon, 18 U.S.C. §§ 922(g) and

924(e).  After a thorough review of the record, we affirm.

**I. Background**

Laster was indicted for possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e).  Before trial, the government notified Laster that it intended to introduce statements he made to police after his arrest, in which Laster identified the man who sold him the gun.[1]  Laster moved to suppress the statements as obtained in violation of his Fifth and Sixth Amendment rights.

According to the testimony at the evidentiary hearing, in May 2003, Laster was arrested on gun charges and released.  In January 2004, police learned Laster was in Delray Beach and conducted surveillance in an area he frequented based on two outstanding state warrants for failure to appear: one related to the gun charge and the other in connection with driving with a suspended license.  Laster also had a pending federal warrant on the gun charge.  Police located and arrested Laster, at which time Officer Michael Moschette read Laster his Miranda[2] rights and talked to him about other crimes.  A few weeks later, police received eight to ten calls from Laster's girlfriend explaining that Laster wanted to speak with police to

---

[1]  References to the trial in this opinion refer to the third trial.  The court granted a mistrial in the first trial after one witness made improper statements.  The second trial resulted in a hung jury, and the court granted a second mistrial.  The government had not sought to introduce Laster's statements in either of those trials.  It was only after the second mistrial that the government issued notice of its intent to introduce the statements.

[2]  Miranda v. Arizona, 384 U.S. 436, 458-71, 86 S.Ct. 1602, 1619-26, 16 L.Ed.2d 694 (1966).

2

provide information in exchange for leniency. Moschette and Officer Keating went to the jail to speak with Laster, who was willing to cooperate. The officers reminded Laster that they would not discuss his pending charges without his attorney present. They did not, however, re-Mirandize Laster before the interview because they were there at Laster's request and did not intend to question him. Laster told police about several other crimes with which the police were familiar. Laster then told police he knew a man named Brown who sold guns. Laster gave detailed information about Brown and his role as a street dealer. In order to verify the information, the police asked Laster how he knew Brown was a dealer, at which point Laster stated that he had gotten the gun in the instant offense from Brown. The officers did not question Laster about the gun other than to verify information. The entire interview lasted about forty-five minutes.

The court denied the motion to suppress, finding, inter alia, that there was no Sixth Amendment violation because the questions were not designed to elicit incriminating responses and the police had informed Laster that they would not discuss his pending case without counsel.

At trial, the testimony established that when police went to arrest Laster on an active warrant, Laster dropped a gun from his hand and ran until he was subdued. There were no bullets in the gun or on Laster's person at the time of his

3

arrest. There were no useable prints on the gun, but blood DNA evidence indicated both male and female DNA on the grip; the male DNA was consistent with Laster's. Laster had informed police that he purchased the gun from a man named Brown.[3]

In his own testimony, Laster admitted his prior convictions for drug offenses and told the jury that he had pleaded guilty to all those other charges because he had been guilty. He stated that he had no prior convictions for any violent crimes and he hated guns because his brother was once hit by a stray bullet. He explained that the night he was arrested, he had received a phone call from his ex-girlfriend, Catherine Cummings. Cummings stated she was having difficulty with her abusive current boyfriend, a man named Brown, who had beaten her that night and then left. Cummings was upset, took a gun from Brown, and planned to shoot him. Laster met her and took the gun from her to prevent her from doing anything. As Laster and Cummings were talking, police arrived and Cummings walked away. Laster panicked, dropped the gun, and started to walk away.

Laster stated that he was not guilty of the instant offense because he was trying to do something right. Laster wanted to see Brown punished and was hoping that, by lying to police about buying the gun from Brown, police would

---

[3] The parties stipulated that Laster had a prior felony conviction.

help him convict Brown. He explained that he did not tell police about Cummings because he did not want her to get into trouble. Laster admitted that he knew he was not allowed to possess a gun because of his criminal history, and he further admitted that he possessed the gun that night. Laster denied making up the story after he learned of the DNA results. He testified that he did not call the police or Cummings's family to intervene. And he stated that Brown was not in imminent danger because Laster did not know where Brown was when Cummings gave Laster the gun.

Laster requested that the jury be instructed on the defense of necessity or justification because he possessed the gun to prevent danger to others. The government objected to the instruction, and the court found that the instruction was not appropriate and denied it. Laster was convicted.

The probation officer prepared a presentence investigation report ("PSI"), assigning a base offense level of 20 under U.S.S.G. § 2K2.1(a)(4)(A) (2004), with a two-level enhancement under § 3C1.1 for obstruction of justice based on Laster's false testimony at trial. With no other adjustments or reductions, the total offense level was 22. Calculating Laster's criminal history points, the probation officer listed prior convictions for grand theft, possession of cocaine and marijuana, sale of cocaine, and driving without a license, which resulted in a criminal history

category VI. These offenses occurred when Laster was between sixteen and twenty-one years old. The probation officer noted numerous other criminal conduct beginning when Laster was fifteen, but which was not scored in his criminal history calculations. With a total offense level of 22 and a criminal history category VI, the resulting advisory guidelines range was 84 to 105 months imprisonment.

Laster objected, among other things, to the enhancement for obstruction of justice, and he asserted that a downward departure was appropriate because his criminal history category over-represented his past.[4]

At sentencing, the court overruled the objections and adopted the PSI. After considering the advisory guidelines and the sentencing factors of 18 U.S.C. § 3553(a), the court sentenced Laster to 96 months imprisonment and 3 years supervised release.

## II. The Appeal

Laster raises three issues on appeal: (1) the denial of the motion to suppress, (2) the jury instructions, and (3) his sentence.

### A. Motion to Suppress

---

[4] Laster also objected to the failure to recommend a reduction for acceptance of responsibility. He does not challenge the denial of this reduction on appeal, and, therefore, he has abandoned it. United States v. Smith, 416 F.3d 1350, 1354 (11th Cir. 2005).

Laster argues that the district court erred by denying his motion to suppress because the use of his post-arrest statement is prohibited by Massiah v. United States, 377 U.S. 201 (1964). He notes that he was in custody at the time of the interview and that counsel was not present.

In reviewing a district court's decision on a motion to suppress, we review factual findings for clear error and the application of the law to those facts de novo. United States v. Acosta, 363 F.3d 1141, 1144 (11th Cir. 2004); United States v. Chanthasouxat, 342 F.3d 1271, 1275 (11th Cir. 2003); United States v. Tovar-Rico, 61 F.3d 1529, 1534 (11th Cir. 1995). The facts are construed in favor of the party that prevailed below. United States v. Perkins, 348 F.3d 965, 969 (11th Cir. 2003).

As an initial matter, Laster raises only a Sixth Amendment issue on appeal. Therefore, he has abandoned the Fifth Amendment claim. United States v. Smith, 416 F.3d 1350, 1354 (11th Cir. 2005).

As the Supreme Court has explained, the Sixth Amendment[5] prohibits the admission of statements deliberately elicited by the government from the defendant after adversary criminal proceedings have begun, unless the defendant's counsel is

_____

[5] The Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right is offense specific. McNeil v. Wisconsin, 501 U.S. 171, 175, 111 S.Ct. 2204, 2207, 115 L.Ed.2d 158 (1991); United States v. Gonzalez-Lauzan, 437 F.3d 1128, 1140 (11th Cir. 2006).

7

present or the defendant waives his right to counsel. <u>Massiah v. United States</u>, 377

U.S. 201, 84 S.Ct. 1199, 1203, 12 L.Ed.2d 246 (1964); <u>United States v. Gunn</u>, 369

F.3d 1229, 1237 (11th Cir. 2004). Thus, "the clear rule of <u>Massiah</u> is that once

adversary proceedings have commenced against an individual, he has a right to

legal representation when the government interrogates him." <u>Brewer v. Williams</u>,

430 U.S. 387, 401, 97 S.Ct. 1232, 1240, 51 L.Ed.2d 424 (1977).

Notably, the standard for a Sixth Amendment violation differs from the

standard applicable to Fifth Amendment custodial interrogations, and what

constitutes an interrogation differs depending on the right asserted. <u>See</u> <u>Fellers v.</u>

<u>United States</u>, 540 U.S. 519, 524, 124 S.Ct. 1019, 1023, 157 L.Ed.2d 1016 (2004).

The standard under the Sixth Amendment focuses the analysis on whether the

police deliberately elicited incriminating statements.[6] <u>Id.</u> Moreover, elicitation is

more than mere listening. <u>Kuhlmann v. Wilson</u>, 477 U.S. 436, 106 S.Ct. 2616,

2630, 91 L.Ed.2d 364 (1986).

Here, the police did not deliberately elicit incriminating information.

Although Laster was in custody, Laster initiated the conversation, and he knew he

was speaking with police when he made the statements. <u>Edwards v. Arizona</u>, 451

---

[6] In contrast, the Fifth Amendment forbids the use of statements taken from a defendant who is in custody and subject to an interrogation, or its functional equivalent. <u>Rhode Island v. Innis</u>, 446 U.S. 291, 299-301 n.4, 124 S.Ct. 1682, 1689 n.4, 64 L.Ed.2d 297 (1980).

8

U.S. 477, 484-85, 101 S.Ct. 1880, 1180, 68 L.Ed.2d 378 (1981) (concluding that police may speak with a defendant who is represented by counsel if the defendant initiates further communication or conversations with the police.); Cf. United States v. Henry, 447 U.S. 264, 270, 100 S.Ct. 2183, 2186-87, 65 L.Ed.2d 115, (1980) (holding that violation occurred when government used paid informant to pose as cell mate and obtain information from defendant after indictment when the defendant was unaware that cell mate was informant). Here, Laster's statements were not prompted by the police, given at the police's request, or exploited by the police. United States v. Gaddy, 894 F.2d 1307, 1313 (11th Cir. 1990); see also United States v. Gonzalez, 183 F.3d 1315, 1323-24 (11th Cir. 1999), overruled on other grounds, United States v. Diaz, 248 F.3d 1065, 1107 n.59 (11th Cir. 2001).

Laster concedes that the conversation would have been constitutionally acceptable as long as police did not question him about the pending charges. He claims, however, that the police questioned him directly about the firearms, which led to the incriminating statement. Contrary to his allegations, the testimony at the evidentiary hearing established that the police only asked about guns after Laster stated that he could obtain guns from Brown. These questions were designed to verify the information and were not specific to Laster's pending case. It was only in response to this follow-up question that Laster stated he got the gun from

9

Brown. Therefore, the police did not elicit the incriminating statement and there was no Sixth Amendment violation.

B. Jury Instructions

Laster next argues that he was entitled to a jury instruction on necessity because he took the gun to prevent Cummings from harming Brown.

We review a district court's refusal to give a requested jury instruction for abuse of discretion. United States v. Klopf, 423 F.3d 1228, 1241 (11th Cir. 2005). Reversal is warranted only if "(1) the requested instruction was substantively correct, (2) the court's charge to the jury did not cover the gist of the instruction, and (3) the failure to give the instruction substantially impaired the defendant's ability to present an effective defense." Id. (citation omitted). Whether a defendant has put forth a sufficient proffer to warrant the instruction is subject to de novo review. United States v. Dicks, 338 F.3d 1256, 1257 (11th Cir. 2003).

A necessity defense is available in a § 922(g) charge only in extraordinary circumstances. United States v. Deleveaux, 205 F.3d 1292, 1298 (11th Cir. 2000). To establish the defense, Laster must show

> (1) that the defendant was under unlawful and present, imminent, and impending threat of death or serious bodily injury; (2) that the defendant did not negligently or recklessly place himself in a situation where he would be forced to engage in criminal conduct; (3) that the defendant had no reasonable legal alternative to violating the law; and (4) that there was a direct causal relationship between the criminal

10

action and the avoidance of the threatened harm.

Id. at 1297. Laster bears the burden of proving the elements of this defense. Id. at 1299.

As the government concedes, Laster's requested instruction was an accurate statement of the law. Nevertheless, the jury instruction was not appropriate because Laster failed to establish the elements of the defense. First, according to Laster's own testimony, there was no present, imminent, and impending threat of death or serious bodily injury. Laster admitted that he did not know where Brown was at the time he took the gun from Cummings. Moreover, there were no bullets in the gun, and, thus, there was no immediate emergency as required to maintain the defense. United States v. Rice, 214 F.3d 1295, 1297 (11th Cir. 2000).

Second, there were reasonable alternatives available to avoid the harm, such as contacting the police or a member of Cummings's family, which Laster did not employ. Therefore, Laster's testimony did not establish the defense, and the district court did not abuse its discretion by refusing the jury instruction.

### C. Sentencing

Finally, Laster asserts that his sentence was unreasonable because his criminal history category VI equated with the "worst of the worst" offenders and did not satisfy the guidelines' intent. He also challenges the imposition of an

11

enhancement for obstruction of justice.

After Booker,[7] we review a sentence for reasonableness, but must still consider and correctly apply the guidelines in determining a defendant's sentence. United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005). The standards of review previously used by this court remain applicable post-Booker. Id. A district court's factual findings regarding a defendant's credibility in determining whether U.S.S.G. § 3C1.1 applies is reviewed for clear error. United States v. Ndiaye, 434 F.3d 1270, 1303 (11th Cir. 2006); United States v. Williams, 340 F.3d 1231, 1240-41 (11th Cir. 2003). Nothing in Booker prevents the district court from making factual findings by a preponderance of the evidence standard as long as the court applies the guidelines in an advisory fashion. United States v. Chau, 426 F.3d 1318, 1323-24 (11th Cir. 2005).

To the extent that Laster challenges the denial of a downward departure, this court lacks jurisdiction to review that claim. United States v. Winingear, 422 F.3d 1241, 1245-46 (11th Cir. 2005). As nothing in the record suggests that the court believed it lacked authority to depart, we cannot review the departure issue.

After a review of the record, we conclude that the district court properly imposed the obstruction-of-justice enhancement. Under § 3C1.1, a defendant's

---

[7] 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

offense level is enhanced by two levels if he obstructed justice in connection with the instant offense. U.S.S.G. § 3C1.1. Perjury is an example of conduct to which this enhancement applies. U.S.S.G. § 3C.1.1 comment. (n.4(b), (f)); Williams, 340 F.3d at 1240-41. For this enhancement to apply on a finding of perjury, the four elements of perjury must be present: "(1) the testimony must be under oath or affirmation; (2) the testimony must be false; (3) the testimony must be material; and (4) the testimony must be given with the willful intent to provide false testimony and not as a result of a mistake, confusion, or faulty memory." United States v. Singh, 291 F.3d 756, 763-64 (11th Cir. 2002).

Considering Laster's testimony, and the testimony of the other witnesses at trial, the court concluded that Laster's testimony was false and was not the result of mistake or confusion. The court noted that Laster had not told anyone that he was trying to protect Cummings until after his second mistrial and after the DNA test came back consistent with his DNA. Thus, the court's factual finding is supported by a preponderance of the evidence.

Finally, with respect to the reasonableness of the sentence, Laster bears the burden of showing his sentence was unreasonable, a burden he has not met. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). The district court stated that it had considered the advisory guidelines range and the sentencing factors of

13

§ 3553(a) including the need for punishment and deterrence. Laster had a lengthy criminal history, and the court imposed sentence in the middle of the guidelines range. Laster has offered nothing to show that this was unreasonable.

### III. Conclusion

For the foregoing reasons, we **AFFIRM** Laster's conviction and sentence.