OPINION
{¶ 1} Defendant-appellant, Dean A. Geldrich, appeals his conviction in the Butler County Court of Common Pleas on one count of aggravated murder and two counts of kidnapping. We affirm.
 {¶ 2} On January 3, 2006, the Middletown Police were contacted by appellant's roommate, John Sanders, regarding a possible murder. During an interview with Detectives *Page 2 
Mark Specht and Frank Hensley, Sanders claimed that on January 1, 2006, he observed an altercation between appellant and a woman identified as Miranda Lint at the residence he shared with appellant. Sanders indicated he initially observed appellant push Lint into a wall, and later witnessed him choke Lint and punch her in the nose. As the events transpired, Sanders claimed that appellant ordered him to stay in the kitchen, but that from the kitchen, he could hear Lint calling out for help and pleading with appellant as he continued to strike her. Sanders also heard the sounds of duct tape being pulled and torn, after which appellant, who was covered in blood, entered the kitchen to retrieve a large stick. After appellant left the kitchen, Sanders heard what sounded like Lint being beaten with the stick. Sanders indicated that he was ultimately able to leave the residence under the guise of needing to purchase cigarettes, and was unaware of Lint's condition at that time.
 {¶ 3} During the interview, Sanders received a call from Lint's brother who expressed concern that Lint had not been home to pick up a check. Accordingly, and based upon the information provided by Sanders, police officers went to appellant's residence to ascertain whether Lint was still there and in need of medical attention. Upon entering the residence, officers discovered Lint's body rolled in a blanket next to a mattress, and a large quantity of blood on the walls. Later that evening, officers arrested appellant and transported him to the police station.
 {¶ 4} At the police station that night, Detectives Hensley and Specht spoke with appellant after providing him with Miranda warnings. Appellant acknowledged his rights and signed a card indicating that he was voluntarily waiving the same. The detectives then began questioning appellant regarding who killed Lint and left her body in his house. Appellant answered the question with a riddle: "If a farmer has carrots growing in his garden then you can say that the farmer planted them there." When officers questioned appellant further regarding the analogy, appellant agreed to stop "referring to the body as a carrot." He then *Page 3 
began to describe the murder scene, before becoming angry and demanding a lawyer. The detectives ceased their interrogation at that time.
 {¶ 5} Appellant was arraigned the following day on charges of aggravated murder, kidnapping and tampering with evidence, at which time he was advised of his right to counsel. After concluding a colloquy with appellant, during which appellant indicated he could not afford an attorney, the trial court indicated that counsel would be assigned to represent him. Appellant was thereafter returned to jail.
 {¶ 6} Two days later, on January 6, 2006, and before counsel had been appointed to represent appellant, Detective Specht obtained a search warrant to seize blood, hair, saliva, "major case prints," and fingernail scrapings from appellant. As the search warrant was being served upon appellant later that day, appellant whispered to Detective Specht, "Ed, E-D * * * you need to check her eye, Ed." When Detective Specht asked appellant what he had said, appellant repeated, "I want to tell you about the Ed on the ring and look at her eye." Appellant also stated that he had been "wanting to talk to [the detective]. I've been telling jail people to get you because I wanted to talk to you." Detective Specht told appellant that he needed to "deal with the search warrant" first.
 {¶ 7} Detective David Short proceeded to collect the requested samples from appellant, speaking to appellant only to instruct him as to how to provide the samples. During the collection process, however, appellant again stated, "I've been wanting to talk to you guys." Accordingly, after the samples were collected, Detectives Hensley and Specht met with appellant in an interview room, and Detective Hensley read appellant his rights from a Miranda card. Appellant signed and dated the card, indicating that he understood his rights and was voluntarily waiving the same. The detectives proceeded to question appellant, who confessed details concerning Lint's murder.
 {¶ 8} Prior to trial, appellant moved the trial court to suppress various evidence, *Page 4 
including his statements to authorities during the January 6, 2006 interview. The court denied appellant's motion following a hearing on the matter. The case proceeded to trial before a three-judge panel, at the conclusion of which appellant was found guilty of one count of aggravated murder and two counts of kidnapping. Appellant was subsequently sentenced to life imprisonment.
 {¶ 9} Appellant now appeals his conviction, advancing three assignments of error. All three errors concern the trial court's ruling on appellant's motion to suppress his January 6, 2006 confession, and our analysis is limited to such issue accordingly. For ease of discussion, appellant's assignments of error will be addressed out of order.
 {¶ 10} Assignment of Error No. 3:
 {¶ 11} "THE TRIAL COURT ERRED IN HOLDING THAT [APPELLANT] WAIVED HIS 6TH AMENDMENT RIGHT TO COUNSEL BY EXECUTING A MIRANDA WAIVER AFTER HE HAD EXPRESSED HIS DEMAND FOR COUNSEL AT A PRIOR INTERROGATION AND AT HIS INITIAL APPEARANCE."
 {¶ 12} Appellant first argues the trial court erred in denying his motion to suppress, where it concluded he waived his Sixth Amendment right to counsel by executing a Miranda waiver. Appellant contends his waiver, given to detectives following their execution of the search warrant for biological samples, was invalid because the detectives "initiated contact" with him when they executed the warrant. We find appellant's contention without merit.
 {¶ 13} "Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of *Page 5 
the trial court, whether the facts satisfy the applicable legal standard." State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. (Internal citations omitted.)
 {¶ 14} "The Sixth Amendment right to counsel is triggered `at or after the time that judicial proceedings have been initiated * * * whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" Fellers v. United States (2004), 540 U.S. 519, 523,124 S.Ct. 1019, quoting Brewer v. Williams (1977), 430 U.S. 387, 398,97 S.Ct. 1232. The United States Supreme Court has held that "an accused is denied `the basic protections' of the Sixth Amendment `when there [is] used against him at his trial evidence of his own incriminating words, which * * * agents * * * deliberately elicited from him after he had been indicted and in the absence of his counsel.'" Id., quotingMassiah v. United States (1964), 377 U.S. 201, 206, 84 S.Ct. 1199. InMichigan v. Jackson (1986), 475 U.S. 625, 636, 106 S.Ct. 1404, the court further held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." (Emphasis added.)
 {¶ 15} The United States Supreme Court has also recognized, however, that "nothing in the Sixth Amendment prevents a suspect charged with a crime and represented by counsel from voluntarily choosing, on his own, to speak with police in the absence of an attorney." Michigan v.Harvey (1990), 494 U.S. 344, 352, 110 S.Ct. 1176. "Although a defendant may sometimes later regret his decision to speak with police, the Sixth Amendment does not disable a criminal defendant from exercising his free will. To hold that a defendant is inherently incapable of relinquishing his right to counsel once it is invoked would be `to imprison a man in his privileges and call it the Constitution.'" Id. at 353. (Internal citation omitted).
 {¶ 16} Appellant contends the rule set forth in Jackson applies in this case because *Page 6 
the detectives initiated "contact" with him when they executed the search warrant for biological samples.[1] As stated, however, the Sixth Amendment prohibits government officials from "deliberately eliciting" information from a defendant after he has been indicted and in the absence of counsel. Massiah, 377 U.S. at 206. Contrary to appellant's assertion, the detectives' "contact" with appellant in this case for the purpose of collecting samples did not equate to police-initiated interrogation, or a deliberate elicitation of information, triggering application of Jackson.
 {¶ 17} In the Fifth Amendment context, the United States Supreme Court has found that a police officer's instructions to a defendant concerning the performance of physical sobriety tests do not constitute "interrogation" designed to elicit a response. Pennsylvania v.Muniz (1990), 496 U.S. 582, 603-605, 110 S.Ct. 2638. Moreover, the United States Supreme Court has found that a defendant initiates communication with authorities where, while being transported to jail by a police officer, the defendant asks the officer, "[w]ell, what is going to happen to me now?" Oregon v. Bradshaw (1983), 462 U.S. 1039,1043-1046, 103 S.Ct. 2830. The Ohio Supreme Court has similarly found that a defendant initiates communication with authorities where, after requesting an attorney during police questioning, and after police cease questioning and offer to get the defendant a telephone book to call an attorney, the defendant tells the police he has changed his mind and wants to put [his confession] on tape" and "get it off his chest."State v. Raglin, 83 Ohio St.3d 253, 262-263, 1998-Ohio-110.
 {¶ 18} In this case, the trial court found, and the record supports, that appellant initiated communication with the detectives during their execution of the search warrant, before waiving his right to counsel and confessing details of Lint's murder. Detective Specht *Page 7 
testified during the suppression hearing that while the search warrant was being executed, appellant whispered to him, "Ed, E-D * * * you need to check her eye, Ed" and "I want to tell you about the Ed on the ring and look at her eye." Appellant also indicated that he had been "wanting to talk to [the detective]. I've been telling jail people to get you because I wanted to talk to you." Detective Specht testified that he told appellant he needed to "deal with the search warrant" first.
 {¶ 19} In addition, Detective Short testified that as he proceeded to collect the requested samples from appellant, he spoke to appellant only to instruct him as to how to provide the samples. During the collection process, however, appellant again stated, "I've been wanting to talk to you guys." Thereafter, Detectives Hensley and Specht met with appellant in an interview room, and Detective Hensley read appellant his rights from a Miranda card. Appellant signed and dated the card, indicating that he understood his rights and was voluntarily waiving said rights, and proceeded to confess details concerning Lint's murder.
 {¶ 20} Significantly, this court has recognized that "Miranda warnings given to a defendant are sufficient to make him aware of his Sixth Amendment right to counsel. Once admonished with Miranda warnings, an accused is sufficiently apprised of the nature of his Sixth Amendment rights and the consequences of abandoning those rights, so that his waiver can be considered knowing and intelligent." State v. Johnson
(Jan. 30, 1989), Clinton App. No. CA88-02-002, citing Patterson v.Illinois (1988), 487 U.S. 285, 108 S.Ct. 2389.
 {¶ 21} Based upon the foregoing, we find the trial court did not err in finding that appellant initiated the communication with authorities that yielded the subject confession, and in finding his subsequent waiver of counsel valid. Accordingly, we find the trial court did not err in denying appellant's motion to suppress on this basis. Appellant's third assignment of error is therefore overruled. *Page 8 
 {¶ 22} Assignment of Error No. 1:
 {¶ 23} "THE TRIAL COURT ERRED IN HOLDING THAT CRIM.R. 44(C)'S ATTORNEY WAIVER PROCEDURES WERE INAPPLICABLE TO [APPELLANT'S] WAIVER TO THE POLICE DURING QUESTIONING AFTER HIS INITIAL APPEARANCE IN COURT."
 {¶ 24} Appellant also contends the trial court improperly denied his motion to suppress where it found the requirements of Crim. R. 44(C) did not apply to his January 6, 2006 waiver of counsel. We disagree.
 {¶ 25} The United States Supreme Court has explained that the Sixth Amendment provides "a * * * statement of the rights necessary to a full defense[,]" which includes the right to the assistance of counsel.Faretta v. California, 422 U.S. 806, 818, 95 S.Ct. 2525. "[W]hen a defendant chooses to have a lawyer manage and present his case, law and tradition may allocate to the counsel the power to make binding decisions of trial strategy in many areas. This allocation can only be justified, however, by the defendant's consent, at the outset, to accept counsel as his representative." Id. at 820-821. (Internal citations omitted.) (Emphasis added.)
 {¶ 26} Crim. R. 44 embodies the Sixth Amendment's guarantee that a criminal defendant be provided the assistance of counsel, and sets forth the requirements for a defendant to waive such right and proceed pro se. See State v. Martin, 103 Ohio St.3d 385, 2004-Ohio-5471, ¶ 22-28. Specifically, Crim. R. 44(A) provides: "Where a defendant charged with a serious offense is unable to obtain counsel, counsel shall be assigned to represent him at every stage of the proceedings from his initial appearance before a court through appeal as of right, unless the defendant, after being fully advised of his right to assigned counsel, knowingly, intelligently, and voluntarily waives his right to counsel." Crim. R. 44(C) provides: "Waiver of counsel shall be in open court and the advice and waiver shall be recorded as provided in Rule 22. In addition, in serious offense cases the waiver shall be in *Page 9 
writing."
 {¶ 27} Appellant contends Crim. R. 44 applies in this case such that his waiver was invalid where it was not made in open court, placed on the record and reduced to writing, and where the court failed to explain the case to him. As previously discussed, however, the trial court found, and the record demonstrates, that appellant initiated communication with the detectives at the jail during their execution of the search warrant. We find the waiver requirements specified in Crim. R. 44(C) do not apply to such instances in which a defendant, who has previously invoked his right to counsel, initiates communication with authorities, is subsequently provided with Miranda warnings, and waives his right to counsel for that exchange by signing a card setting forth such right. See Martin at ¶ 22-28. See, also, Patterson,487 U.S. at 293, fn. 5. Rather, well-established Sixth Amendment jurisprudence supports the trial court's finding of a valid waiver under such circumstances. See Patterson at 288-289, 292-294.
 {¶ 28} Moreover, we note that, notwithstanding any alleged violation of Crim. R. 44 in this case, the absence of a constitutional violation with respect to appellant's waiver precludes application of the exclusionary rule. See City of Kettering v. Hollen (1980),64 Ohio St.2d 232, 234-235. Because the state did not obtain the subject confession in violation of appellant's Sixth Amendment right to counsel, as discussed above, the trial court did not err in failing to exclude such evidence.
 {¶ 29} Based upon the foregoing, we find the trial court did not err in denying appellant's motion to suppress where appellant waived his right to counsel by executing a Miranda waiver after initiating communication with the detectives. Appellant's first assignment of error is therefore overruled.
 {¶ 30} Assignment of Error No. 2:
 {¶ 31} "THE TRIAL COURT ERRED BY HOLDING THAT [APPELLANT] WAIVED HIS *Page 10 
6TH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF TRIAL COUNSEL DURING JAILHOUSE QUESTIONING BY THE POLICE."
 {¶ 32} Finally, appellant argues the trial court erred in denying his motion to suppress where it found he waived his Sixth Amendment right to "the effective assistance of counsel." Appellant argues he was wholly denied the assistance of trial counsel during the two-day period between his initial appearance, at which the trial court indicated counsel would be appointed to represent him, and the date of his confession, as well as during the January 6, 2006 interview itself. Appellant contends such denial requires reversal under the United States Supreme Court's decision in United States v. Cronic (1984), 466 U.S. 648,104 S.Ct. 2039. We disagree.
 {¶ 33} In Cronic, the United States Supreme Court held that the "right to the effective assistance of counsel is * * * the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing." Id. at 656. The court explained that while the Sixth Amendment is generally only implicated where the challenged conduct of trial counsel has been shown to affect the reliability of the trial process, there are circumstances "that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." Id. at 658. "Most obvious," as the court explained, "is the complete denial of counsel * * * at a critical stage of [the accused's] trial." Id. at 659.
 {¶ 34} As an initial matter, we recognize that postarraignment questioning by police is a "critical stage" at which the right to counsel applies, and that appellant had invoked his right to counsel in this case. Jackson, 475 U.S. at 629-630. Nevertheless, as previously discussed, the trial court found, and the record supports, that appellant initiated the communication with detectives during their execution of the search warrant for biological samples that led to the confession at issue. The detectives provided appellant withMiranda warnings, which were sufficient to apprise him of his Sixth Amendment right to counsel. *Page 11 Patterson, 487 U.S. at 293. The record demonstrates that appellant acknowledged his rights by signing and dating a card setting forth the same, indicating that he understood and was voluntarily waiving such rights. Appellant then confessed details concerning Lint's murder. Under these facts, we find Cronic is inapplicable.
 {¶ 35} Based upon the foregoing, we find the trial court did not err in denying appellant's motion to suppress where it found appellant validly waived his Sixth Amendment right to counsel after initiating communication with the detectives. Appellant's second assignment of error is therefore overruled.
 {¶ 36} Judgment affirmed.
YOUNG, P.J. and WALSH, J., concur.
[1] Significantly, appellant does not argue the search warrant was improperly served upon him in the absence of counsel, but rather, claims the detectives "initiated contact" with him at that time such that his subsequent statements to the detectives, in the absence of counsel, were inadmissible pursuant to Jackson. *Page 1