Engram M. BELLAMY, Plaintiff,

v.

Alyssa Campbell WELLS, Brent Uzdanovics, Defendants.

Civil Action No. 5:07cv00035.

United States District Court, W.D. Virginia, Harrisonburg Division.

May 15, 2009.

Engra M. Bellamy, Waynesboro, VA, pro se.

Richard Hustis Milnor, Taylor Zunka Milnor & Carter Ltd., Charlottesville, VA, for Defendants.

## MEMORANDUM OPINION AND ORDER

WILSON, District Judge.

In this 42 U.S.C. § 1983 action, Plaintiff Engram M. Bellamy alleges that Defendants Alyssa Campbell Wells and Brent Uzdanovics, two City of Waynesboro police officers, violated his Fifth and Sixth Amendment rights because they questioned him post-indictment outside his counsel's presence, without giving proper warnings or obtaining a waiver of his rights. Bellamy's statements were used against him at trial, and his resulting conviction was reversed on appeal because the Court of Appeals of Virginia found that the officers violated Bellamy's Sixth Amendment rights. Defendants have moved for summary judgment on qualified immunity grounds. The Court concludes that, in the light most favorable to Bellamy, Wells and Uzdanovics violated Bellamy's clearly established Fifth and Sixth Amendment rights, and accordingly denies their Motion for Summary Judgment.

### I.

The following are the relevant facts in the light most favorable to Bellamy:[1] On November 12, 2002, a Waynesboro grand jury indicted Bellamy for forcible rape. Three months later, while in jail and well after he had counsel, Bellamy suffered an asthma attack and was hospitalized. Wells was assigned to guard Bellamy at the hos-

pital on the evening of February 11, 2003. Wells wore her uniform and badge and introduced herself to Bellamy as an officer of the Waynesboro Police Department. Wells did not warn Bellamy of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 441, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). During the four hours that Wells guarded Bellamy, they discussed a variety of topics, including Bellamy's rape charge. During that conversation, Bellamy made incriminating statements to Wells regarding that charge.

After learning that Wells had established rapport with Bellamy, Uzdanovics and another officer, Robert Luzader, briefed her about Bellamy's case and asked her to guard him at the hospital again the next evening, this time while wearing a recording device. Defendants communicated their plans to the Assistant Commonwealth's Attorney responsible for the case, Thomas Weidner, and Defendants understood that Weidner had approved the plan for Wells to guard Bellamy that evening while wearing a recording device, so long as Wells first provided *Miranda* warnings. Defendants understood that Bellamy had counsel at that time for the rape charge but intended that Wells engage Bellamy in conversation about his rape charge and surreptitiously record that conversation. The recording device was placed in the breast pocket of Wells's uniform. *Miranda* warnings are neither audible in the recording nor included in the transcript of their conversation.[2]

---

1. Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court views the facts in the light most favorable to the nonmoving party. *Henry v. Purnell*, 501 F.3d 374, 377 (4th Cir.2007).

2. As the Virginia Court of Appeals found, the transcript of the conversation between Bellamy and Wells contains only one *Miranda* reference:

Q [Wells]: I got *bitched* out because of you.

A [Bellamy]: From who?

Q: No, I got in trouble because we were talking last night and I was being all personal with you.

A: Who told them that we were being personal?

Q: Who knows. I don't know. I didn't read you *Miranda*. It's like, who cares?

A: Nobody do.

Q: Who knows?

The record is unclear as to whether Wells initiated the conversation with Bellamy that evening.[3] Bellamy again made incriminating statements.

On February 20, 2003, at his trial in the Circuit Court of the City of Waynesboro, Bellamy moved to suppress on Fifth, Sixth, and Fourteenth Amendment grounds the statements he made to Wells at the hospital. After a hearing, the Circuit Court ruled that the statements were admissible. At Bellamy's trial, Wells testified about Bellamy's statements to her in the hospital, and the jury found Bellamy guilty of rape.

The Court of Appeals of Virginia reversed Bellamy's conviction and remanded for a new trial, "hold[ing] that the police deliberately elicited Bellamy's statements in violation of his Sixth Amendment right to counsel and that the trial judge erred in admitting them in the Commonwealth's case-in-chief." *Bellamy v. Commonwealth*, No. 3189-03-3, 2005 WL 1544775, at *6 (Va.Ct.App. July 5, 2005). As that court stated, "[i]t is uncontested that when [Wells] obtained Bellamy's statements, the Commonwealth had initiated judicial proceedings against Bellamy and Bellamy was represented by an attorney." *Id.* at *5. Nevertheless, "[t]hroughout their conversations about matters unrelated to the case, [Wells] return[ed] to the circum-

stances of the rape case and question[ed] Bellamy about inconsistencies." *Id.* at *3.

> When asked what [Wells]'s goal was during this interview, the officer in charge of the operation [Uzdanovics] testified simply, "her role was to see what he would say about his case."
>
> . . . .
>
> [T]he record in this case is simply devoid of the words that were used to apprise Bellamy of his Sixth Amendment rights and it contains no indication that Bellamy expressly waived those rights. The record establishes, however, that [Wells] did not read Bellamy *Miranda* rights the day prior to the recorded conversation. In addition, the transcription of [Wells]'s conversation with Bellamy discloses a far different version of the *Miranda* reference than her testimony. Although both [Wells] and . . . Uzdanovics testified that [Wells] advised Bellamy of his *Miranda* rights when she walked into his hospital room with a hidden recording device, the record reveals she discussed *Miranda* in a frivolous manner.

*Id.* at *5–6. The Court of Appeals did not address his Fifth Amendment claim because it found his Sixth Amendment claim dispositive. *Id.* at *4. On remand, the Waynesboro Circuit Court suppressed all evidence in the prosecution's case-in-chief

---

(Inaudible comments.)

(Pause.)

Q: For you?

A: Yeah.

Q: I figured you were talking philosophy with everybody and they decided to give you a party so you'd shut up.

A: No, But they come in here with that mask on. I'm still talking . . . (inaudible comments).

*Bellamy v. Commonwealth*, No. 3189-03-3, 2005 WL 1544775, at *2–3 (Va.Ct.App. July 5, 2005) (quoting Tr. 2.). At Bellamy's trial

Wells testified that she had "Mirandized" Bellamy, but did not specify the warnings given. *Id.* In her affidavit filed in support of the Motion for Summary Judgment, Wells states that she read Bellamy *Miranda* warnings from a printed card she carried in her uniform pocket before she talked to him that night. (Wells Aff. 2–3.) In his affidavit, Luzader states that he remained outside Bellamy's hospital room door after Wells entered, and that he heard her begin to read Bellamy his *Miranda* rights. (Luzader Aff. 2.)

**3.** In her affidavit, Wells states that their conversation "began." (Wells Aff. 3.)

that officers obtained from Bellamy while he was hospitalized. Before the retrial, Bellamy pleaded guilty to assault and battery.

## II.

Defendants maintain that they did not violate Bellamy's Fifth and Sixth Amendment rights, but even if they did they are entitled to qualified immunity because they did not contravene any clearly established constitutional rule. *In the light most favorable to Bellamy*, Defendants crossed two bright lines, and they are therefore not entitled to qualified immunity. First, well after the Commonwealth had initiated criminal proceedings against Bellamy, and outside his counsel's presence, Defendants deliberately elicited incriminating statements from him for use at trial in violation of the Sixth Amendment. Second, Defendants interrogated Bellamy while he was in custody without administering *Miranda* warnings and Bellamy's statements were introduced at trial against him in violation of the Fifth Amendment. Because, in the light most favorable to Bellamy, a reasonable officer would have known that the conduct at issue violated Bellamy's Sixth Amendment rights and the intended introduction of his statements would violate his Fifth Amendment rights, Defendants do not have qualified immunity.

 Qualified immunity shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (internal quotation marks omitted). The qualified immunity analysis has two prongs: First, the defendant official must have violated a constitutional right of the plaintiff, and second, that right must have been clearly established at the time of the alleged violation.

*Nixon v. Fitzgerald*, 457 U.S. 731, 747, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, —— U.S. ——, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009).

 "The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular [government] conduct." *Saucier v. Katz*, 533 U.S. 194, 205, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). The ultimate question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 201–02, 121 S.Ct. 2151. To assess whether an official's conduct is reasonable, reliance on legal advice is but one relevant factor—albeit an important one when the advice comes from the Commonwealth's Attorney. *Wadkins v. Arnold*, 214 F.3d 535, 542 (4th Cir.2000) (citing *Pritchett v. Alford*, 973 F.2d 307, 316 (4th Cir.1992) ("[T]he most obvious possibility [of exceptional circumstances supporting qualified immunity despite the violation of a clearly established constitutional right] is mistaken official advice by legal counsel.")). But that advice does not "automatically cloak [the officer] with the shield of qualified immunity," *Wadkins*, 214 F.3d at 542, because ordinarily a public official should know the clearly established law governing his conduct. *Harlow*, 457 U.S. at 819, 102 S.Ct. 2727. Thus, although "extraordinary circumstances" may warrant an exception to the *Harlow* rule, "simply following legal advice is insufficient to establish the extraordinary circumstances exception." *Buonocore v. Harris*, 134 F.3d 245, 253 n. 3 (4th Cir. 1998). Moreover, "[a] public official who *fails to follow* legal advice obviously cannot

rely on that advice to establish entitlement to qualified immunity." *Id.* at 253. Ultimately, the qualified immunity inquiry is objective, dependent not on a particular officer's subjective beliefs, but rather on those of a hypothetical, reasonable officer in the circumstances. *Milstead v. Kibler,* 243 F.3d 157, 161 (4th Cir.2001); *Harlow,* 457 U.S. at 819, 102 S.Ct. 2727.

 "In determining whether a right was clearly established at the time of the claimed violation, 'courts in this circuit [ordinarily] need not look beyond the decisions of the Supreme Court, [the Fourth Circuit], and the highest court of the state in which the case arose.'" *Edwards v. City of Goldsboro,* 178 F.3d 231, 251 (4th Cir. 1999) (quoting *Jean v. Collins,* 155 F.3d 701, 709 (4th Cir.1998) (en banc)). The court conducts the clearly established analysis "at a high level of particularity," but "the nonexistence of a case holding the defendant's identical conduct to be unlawful does not prevent denial of qualified immunity," *Edwards,* 178 F.3d at 251, because "qualified immunity was never intended to relieve government officials from the responsibility of applying familiar legal principles to new situations." *Trulock v. Freeh,* 275 F.3d 391, 409 (4th Cir.2001) (Michael J., concurring); *see also Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (holding that a right is clearly established even without a prior decision addressing the precise conduct at issue, so long as its illegality would have been evident to a reasonable officer based on existing case law). Thus, clearly established rights are "not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle involved." *Pritchett,* 973 F.2d at 314.

### A.

 Since at least 1964, deliberately eliciting statements for trial from a defendant after indictment and in the absence of counsel has clearly violated the Sixth Amendment. *See Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). The Supreme Court has "consistently applied the deliberate-elicitation standard in subsequent Sixth Amendment cases." *Fellers v. United States,* 540 U.S. 519, 524, 124 S.Ct. 1019, 157 L.Ed.2d 1016 (2004) (citing *United States v. Henry,* 447 U.S. 264, 270, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980) ("The question here is whether under the facts of this case a Government agent 'deliberately elicited' incriminating statements . . . within the meaning of *Massiah* ) and *Brewer v. Williams,* 430 U.S. 387, 399, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (finding a Sixth Amendment violation where detective "deliberately and designedly set out to elicit information from [the suspect]")). Because "[t]he Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State . . . . the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent." *Maine v. Moulton,* 474 U.S. 159, 176, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985).[4] There are no implicit waivers for "deliberately elicited" statements. *See Michigan v. Harvey,* 494 U.S. 344, 348, 110 S.Ct. 1176, 108 L.Ed.2d 293 (1990) ("[O]nce

---

4. Although the Supreme Court has only recently clarified that a Sixth Amendment violation occurs when the statement is obtained not when it is admitted as evidence, *Kansas v. Ventris,* —— U.S. ——, 129 S.Ct. 1841, 173 L.Ed.2d 801 (2009), here the trial court admitted the wrongfully obtained statement into evidence, so that recent clarification bears on when, not whether, the Sixth Amendment violation occurred.

formal criminal proceedings begin, the Sixth Amendment renders inadmissible in the prosecution's case in chief statements 'deliberately elicited' from a defendant without an express waiver of the right to counsel.").

It is uncontested that Defendants, post-indictment, deliberately elicited incriminating statements for trial from Bellamy outside his counsel's presence. In the light most favorable to Bellamy, Bellamy did not expressly waive his Sixth Amendment right to counsel and defendants did not rely upon the advice of the Assistant Commonwealth's Attorney. Therefore, Defendants violated a clearly established Sixth Amendment right and they have not demonstrated that they are entitled to rely upon the "extraordinary circumstances" exception to *Harlow*'s rule denying qualified immunity when there is a violation of clearly established federal law. It follows that qualified immunity does not shield them from trial on Bellamy's Sixth Amendment claim, and the Court denies their motion for summary judgment as to that claim.

**B.**

 "*Miranda* has become embedded in routine police practice to the point where the warnings have become part of our national culture," and since at least 2000 *Miranda* has been clearly established as a "constitutionally based decision." *Dickerson v. United States,* 530 U.S. 428, 443, 440, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000). *Miranda* protections attach "whenever a person is in custody and subject to interrogation." *United States v.*

*Jamison,* 509 F.3d 623, 628 (4th Cir.2007). A suspect is in custody for *Miranda* purposes after a formal arrest, *see United States v. Leshuk,* 65 F.3d 1105, 1108 (4th Cir.1995) ("A suspect is 'in custody' for *Miranda* purposes if the suspect has been formally arrested or if he is questioned under circumstances in which his freedom of action is curtailed 'of the degree associated with a formal arrest.'"), on the charges that are the subject of the interrogation, *Colorado v. Spring,* 479 U.S. 564, 574, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) ("The Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege.").[5] "[T]he term 'interrogation' under *Miranda* refers not only to express questioning but also to any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect," *Rhode Island v. Innis,* 446 U.S. 291, 300–1, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), so long as it is the officer who initiates the discussion, *Jamison,* 509 F.3d at 628. *See Miranda,* 384 U.S. at 444, 86 S.Ct. 1602 (custodial interrogation means "questioning *initiated* by law enforcement officers after a person has been taken into custody or otherwise deprived his freedom of action in any significant way") (emphasis added).[6]

 In the light most favorable to Bellamy, without giving the requisite *Miranda* warnings in accordance with the legal advice they had received from the Assistant Commonwealth's Attorney, Wells initiated a conversation with Bella-

---

**5.** Bellamy's formal arrest distinguishes this case from the run-of-the-mill *Miranda* violation that turns on close questions as to whether the defendant is in custody, where there are few bright lines and the officer is necessarily cloaked with qualified immunity.

**6.** The court notes its previous holding that, in appropriate circumstances, a *Miranda* violation may give rise to a § 1983 action. *Bellamy v. Wells,* 548 F.Supp.2d 234, 237 (W.D.Va. 2008). The court finds this question a close one. *Compare Hannon v. Sanner,* 441 F.3d 635 (8th Cir.2006) *with McKinley v. City of Mansfield,* 404 F.3d 418, 437 (6th Cir.2005).

my on February 12, 2003 for the very purpose of eliciting incriminating statements for admission at trial, and these statements were then in fact admitted. Therefore, in the light most favorable to Bellamy, Defendants violated Bellamy's clearly-established Fifth Amendment rights, and they do not have qualified immunity as to that claim.[7] Accordingly, the Court denies their motion for summary judgment as to that claim.[8]

### III.

For the foregoing reasons, Defendants' Motion for Summary Judgment is **DENIED.**

It is so **ORDERED.**

---

7. Although, in the light most favorable to Bellamy, Defendants transgressed two constitutional protections—their conduct constitutes deliberate elicitation post-indictment, absent counsel in violation of the Sixth Amendment under *Massiah* as well as a custodial interrogation without a proper warning and waiver in violation of the Fifth Amendment under *Miranda*—the first of these constitutional protections subsumes the second under any likely scenario here. If Bellamy sustained any cognizable injury, it likely flows from a violation of the first protection (the *Massiah* violation) because, even if Defendants had given Bellamy *Miranda* warnings, they would not have been permitted to engage him in dialogue unless Bellamy had initiated that dialogue and had first expressly waived his right to counsel. While important facts and circumstances remain in play, it seems unlikely that the court would submit a Fifth Amendment claim to a jury at trial.

8. Defendants also contend that they did not proximately cause any violation because the Circuit Court judge, a neutral decisionmaker,

initially denied Bellamy's Motion to Suppress and they testified under subpoena. As to the Sixth Amendment claim, this argument fails because "the *Massiah* right is a right to be free of uncounseled interrogation, and is infringed at the time of the interrogation," *Ventris*, 129 S.Ct. 1841; therefore, any Sixth Amendment violation occurred at the hospital, not at Bellamy's trial. This contention fails as to the Fifth Amendment claim because, as the Sixth Circuit has found, "[i]t is ... hard to see how officials whose conduct ultimately impaired a citizen's Fifth Amendment rights could nonetheless escape civil liability merely because a different state official put the statements into evidence at trial." *McKinley v. City of Mansfield*, 404 F.3d 418, 437–38 (6th Cir.2005). *See Malley v. Briggs*, 475 U.S. 335, 345 n. 7, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (rejecting a proximate cause defense in the Fourth Amendment context because "§ 1983 should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions").